use the sum of $44.21 due on the said accounts receivable of the said partnership; that the proceeds of these accounts were the property of and belonged to the defendant," etc.

It requires no citation of authority to show that upon a dissolution of partnership the partners may transfer title of any of their assets to one partner, and that thereupon such partner becomes the absolute owner thereof, and may enforce his title, even against his former copartner. His title does not depend upon the results of an accounting, for the firm has by agreement parted with its interests therein. Consequently, if a copartner thereafter interferes with these assets, an action at law may be brought against him, just as if a stranger had been guilty of the same interference. In this case it is not contended that the counterclaim does not allege such a transfer to the defendant, and the defendant has a right to bring an action at law against his partner for any unlawful interference with or unjust enrichment through such interference with his assets. No accounting is necessary in such action, and the Municipal Court has jurisdiction.

Judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

(88 Misc. Rep. 73)

### GUARANTEE CONST. CO. v. RICKERT–FINLAY REALTY CO.

(Supreme Court, Appellate Term, First Department. December 17, 1914.)

1. CONTRACTS (§ 22*)—REQUISITES—PROPOSAL AND ACCEPTANCE—EXCAVATION WORK.

   A proposed agreement to do excavation work, specifically stating that a contract "along these lines" would be prepared if the arrangement was satisfactory and defendant accepted, was not a contract between the parties, in the absence of a subsequent acceptance, though approved by defendant's engineer.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 67, 82–92, 104–108; Dec. Dig. § 22.*]

2. PRINCIPAL AND AGENT (§ 23*)—EVIDENCE OF AGENCY—SUFFICIENCY.

   In an action for breach of a contract to do excavation work, the terms of which were alleged to have been made and approved by defendant's engineer, evidence *held* insufficient to show that such engineer had power to bind the defendant.

   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. § 23.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Guarantee Construction Company against the Rickert-Finlay Realty Company. Judgment for plaintiff, and defendant appeals, and plaintiff takes a cross-appeal. Reversed, and complaint dismissed.

Argued November term, 1914, before LEHMAN, DELANY, and WHITAKER, JJ.

Robert H. Southard, of New York City, for plaintiff.

Blackwell Bros., of New York City (Leo C. Weiler, of New York City, of counsel), for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WHITAKER, J. This action was begun in 1907. It was tried before the court without a jury on May 1, 1914. The following questions are raised by the appeal: (1) The right of the plaintiff to recover upon the merits; (2) the propriety and validity of the order amending and increasing the judgment; (3) the validity of the cross-appeal by plaintiff from the judgment in his favor, which was subsequently increased by order of the court.

Concerning the first question, the complaint alleges that on or about May 5, 1906, plaintiff and defendant entered into a contract with each other whereby it was agreed that plaintiff should do certain excavating work for defendant, furnish the tools, machinery, etc.; that plaintiff should begin immediately and complete the work as quickly as possible, and that defendant should pay the plaintiff the cost of said work and a net profit of 5 cents a cubic yard in addition to each cubic yard removed up to 20,000 cubic yards, and that the said work should amount to at least 20,000 cubic yards, and that defendant should also pay the expense of transporting plaintiff's machinery to the work; that plaintiff entered upon the performance of the contract, and continued to perform all the conditions, etc., upon its part; that defendant wrongfully refused to permit plaintiff to continue said work; that plaintiff has been damaged in the sum of $500. Defendant denies all these allegations. Plaintiff, as a matter of fact, never did any of the work. It did, however, according to the testimony of its officers, order its machinery to be shipped from Princeton.

The first question really narrows itself down to the simple fact as to whether there ever was a binding contract made between the parties. The plaintiff is a corporation. The witnesses who testified in its behalf were Charles L. Inslee, its president, John S. Martin, the former secretary, and Frank L. Sample, the general manager. The witnesses testified to certain conversations had with Edward J. Rickert, defendant's president, and with Charles E. Bethel, who died before the trial. . Bethel was a civil engineer, and was working for defendant in connection with its grading at Flushing, L. I., which was the grading and excavating plaintiff claimed he contracted to do. Bethel was not an officer of defendant, but simply an employé at a weekly salary. On May 2, 1906, Martin, plaintiff's secretary, went to Flushing, where defendant was doing its own grading and excavating, and had a conversation with Bethel, the employé of defendant. On May 5th Martin called on the president of defendant, Rickert. Martin claims that he discussed the matter with Rickert, and that Rickert told him to "make the proposal in writing to Mr. Bethel, and, if he approved it, the company would sign the contract." Martin then saw Mr. Bethel in Flushing the same day.

Mr. Rickert testified that Martin discussed the work with him and proposed to submit a proposition in writing. Rickert denies that Bethel had any power in the matter, or that he told Martin that Bethel had any power in the matter, or that he would sign a contract if Bethel approved. After Martin and one Sample had concluded a discussion with Bethel concerning the work and its details, Martin, on behalf

of the plaintiff, submitted the following to Bethel, whom he claims approved it, and also to Rickert:

"Subject—Grading Outfit.

"New York, May 5th, 1906.

"Rickert-Finlay Realty Co., 1 West 34th St., New York City.

"Dear Sir: We beg to outline for your consideration and acceptance the following general conditions of an agreement entered into this morning between our Mr. Martin and your engineer, Mr. Bethel, at Flushing, Long Island:

"We propose to place upon your development work at Broadway Station, Flushing, a grading outfit to consist of not less than 40 wheel and drag scrapers and the necessary force to operate same. Our operations are to commence at once and be continued under the direction of your engineer. You are to pay for the actual cost of these operations, plus a net profit to us of 5 cents for every cubic yard of earth removed, up to 20,000 yards. If the total number of yards is in excess of 20,000 yards, you are to pay us a net profit of 4 cents per cubic yard for any such excess up to 50,000 yards. You are to pay us further 25 per cent. of any difference between the actual cost of the work, not including our profit, and 30 cents per yard. Going over the work this morning, we figured it was costing you at present from 35 to 40 cents to move this material. We think, therefore, that we would be fairly entitled to 25 per cent. of any saving we can make you on these figures.

"It is understood that the above prices are based upon the following conditions: The maximum haul is to be 300 feet, and you are to allow us 1 cent per yard for every 100 feet overhaul in estimating the saving. We are not to be asked to move anything larger than one-man stone. We will make special agreement with you regarding the removal of rock, if you so desire it.

"The payments for the actual cost of the work are to be made as the work progresses and as necessity may require. The payment of our profit is to be made monthly, and based upon the engineer's estimate. Our share of any saving is to be adjusted when our entire work is completed and the actual cost per yard determined. It is understood that the expenses of transportation of plant to Flushing are necessarily a part of the cost of the work and will be paid for by you. It is also understood that you furnish us with stabling for as many teams as we may find it necessary to employ in order to prosecute the work in accordance with your directions.

"We have handled a large amount of work on this basis, and it has been customary for us to render a bill at stated intervals for the actual cost. Our bills are itemized, and vouchers for each item are on file in our office, where they will always be open to your inspection. We would prefer to have this method followed, as it gives a better opportunity of checking up and keeping track of the cost of the work; but if you prefer to pay all the bills yourselves, after we have O. K.'d them, we have no objection to your doing so.

"With regard to the payment of labor on the work we would suggest and prefer you to have a timekeeper to check up our pay rolls. We trust that the arrangement will be satisfactory, and upon your acceptance will prepare a contract along these lines.

"Very truly yours,    Guarantee Construction Co.,

"James S. Martin, Jr., Treasurer."

The plaintiff claims that this was the contract, the same having been approved by Bethel before it was submitted to Rickert, and Martin testifies in substance that it was approved by Bethel and then submitted to Rickert, defendant's president, who refused to sign it and declined to go ahead with the matter. This ended the negotiations.

[1] A reading of this exhibit makes it perfectly plain that there never was a contract. It is not a contract. It is a proposed agreement and suggestion. Upon its face it refutes the idea that it was ever in-

tended to be a contract. It specifically states that a contract "along these lines" would be prepared if the arrangement was satisfactory, and if the defendant accepted the suggestions. It is not even an unconditional offer upon the part of defendant, upon which an acceptance otherwise than in writing would have bound the plaintiff, much less the defendant. It lacks the elements of a binding contract.

[2] The contention of the plaintiff that Bethel had power to bind the defendant corporation is unsound. There is not sufficient evidence to show that Bethel had power to bind the defendant, even taking the testimony of defendant's witnesses as true, and even conceding that the paper submitted was a contract. The motion of defendant's attorney to dismiss the complaint should have been granted. Having come to this conclusion, it is unnecessary to discuss the other questions.

The judgment should be reversed, with costs to the defendant appellant, and the complaint dismissed, with costs. All concur.