Donald R. LORD et al., Plaintiffs, Appellants,

v.

Alvin M. KELLEY et al., Defendants, Appellees.

No. 6307.

United States Court of Appeals First Circuit.

July 13, 1964.

John Warren McGarry, Boston, Mass., for appellants.

John M. Brant, Atty. Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Joseph M. Howard, Attys. Dept. of Justice, W. Arthur Garrity, Jr., U. S. Atty., and Murray H. Falk, Asst. U. S. Atty., were on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

On April 18, 1962 Intelligence Agents of the Internal Revenue Service, upon what was stated to be an appointment for a routine audit, entered the combined place of business and home of appellant Lord, a public accountant, and departed some hours later with three cartons of business records, bank statements, checks and stubs, etc., belonging to the other appellants, hereinafter taxpayers, which had been in Lord's custody. Even disregarding dramatic embellishments suggested by Lord in his testimony, and by counsel in argument,[1] the agents' conduct was taken either over the continued objection of Lord, or with consent obtained only by threats of personal harassment, and was in total violation, also, of the rights of the taxpayers. It is true that Flattery, the agent in charge, had in his possession a summons issued under authority of section 7602 of the 1954 Code addressed to Lord and requiring him to appear and give testimony on April 30 and to bring with him the books, records, ledgers, bank statements, cancelled checks and other papers, designated in general terms, of the taxpayers here involved. The summons was served upon Lord as the agents were leaving. This summons, of course, was not a search warrant, nor did it even purport to justify anything done by the agents on April 18. The agents' conduct, in other words, was without semblance of excuse, and the finding of the district court that they

---

1. For example, although no force or threat of force was used in connection with the removal, counsel voiced as a special complaint that Lord's constitutional rights had been invaded in the presence of his 2- and 4-year old children.

knew there was none has not been, and could not be, assailed.[2]

Thereafter Lord, joined by the taxpayers, filed in the district court what they termed a "Complaint for temporary restraining order and injunction. Return of records and suppression of evidence." Named as defendants were the local District Director and the local Chief of Intelligence of the IRS, and the three agents who made the seizure. The relief asked was that all documents seized "and the oral information, statements and admissions made, and all leads and clues therefrom * * * be suppressed" and that the records, etc. be returned. Secondly, that defendants "be perpetually enjoined from using in any shape, form or manner whatever, directly or indirectly, and from * * * transferring to any person * * * any and all of such evidence illegally obtained." There were also prayers for a preliminary injunction and for general relief.

Following a hearing at which evidence was introduced the court concluded that "where a federal criminal prosecution is probable a federal trial court shall have nonstatutory jurisdiction to enjoin federal enforcement officers from holding or using property they unlawfully seized." ° It made detailed findings and entered a judgment ordering all records, etc. taken from Lord returned to him, and enjoining all representatives of the IRS "and all persons who have acted in concert with them in the use of the records and papers transferred by Lord" from ever "using in any proceeding * *

any information or clues derived during the time they held such records." It further ordered that all "documents, writings, and other papers obtained from persons not parties to this action, * * * notes of interviews with and statements, affidavits and transcripts of testimony * * * and * * * work papers and other papers prepared by personnel of the Internal Revenue Service for use solely within the Government" be deposited with the Clerk of the District Court "open to inspection at any time, without restriction" by any judge or by Lord or by the taxpayers involved. The judgment continued, "[N]othing in this injunction shall preclude the United States or its agents from requiring by appropriate warrant, subpoena, summons, or other due process of law, the production of any record or paper covered by the summons" in the possession of the agents when they arrived at Lord's home. It is, essentially, from this last that appellants jointly appeal.[3] There is no cross appeal.

The first question is that of our jurisdiction. Before coming directly to this a further recitation may be in order. It is apparent that appellants have received all of the present relief requested. (Indeed, by a painstakingly thorough order they have received more present relief than they requested.) What they wish is that there be attached to the documents returned to them a perpetual immunity from process, civil, as well as criminal. Ostensibly, and persistently, they ask this relief in the name of restoration to the status quo, but, in fact,

2. The only explanation offered was that the agents intended, if there was not a "voluntary" production, to summon these records, and wished to make a preliminary verification to make sure of full compliance. Expression of our views about such behavior seems hardly necessary.

3. The notice of appeal was *"from that part* of the judgment * * * which denied that the unlawful search and seizure constituted a violation of the rights of said parties plaintiff under

the 5th amendment to the Constitution of the United States as well as under the 4th amendment thereto; and further, which refused and denied to the said plaintiffs herein such relief sought as would perpetually enjoin said defendants herein from using the evidence illegally obtained from the books, statements, and leads and clues therefrom in any future proceedings, criminal, civil or administrative, Federal or State." Whether the search violated the Fifth Amendment as well as the Fourth does not affect our disposition of this appeal.

they ask it as a penalty.[4] The announced basis of the court's decision was that appellants were "entitled to be as well off as if Flattery had not unlawfully seized those papers, but * * * not * * * any better off".[5] It pointed out that "Flattery knew of these records before they were delivered to him. More significantly, he had already signed a summons covering those records." From this the court concluded that a total immunization of the records would not merely restore the status quo, but would deprive the government of the benefit of the knowledge it had before the incident. Appellants' response is that the record "clearly demonstrates" that the government had "no such prior independent knowledge." The justification, if any, for this statement must depend upon what is meant by the word "such." Obviously, and admittedly, the government did not have the detailed knowledge of specific records beforehand that it had afterwards. But, equally obviously, it had very considerable knowledge, as the summons conclusively establishes.

In this posture we turn to appellants' principal, and insistent, position that there is an "express provision in the judgment below that these records and other property may now be obtained by process." The court, as already quoted, supra, clearly made no such provision. It merely stated that it was declining to rule the reverse. When the government's brief noted the difference appellants stated in reply, "This is at best a sophistry." .

We might say, parenthetically, that we have some difficulty in deciding whether appellants are clear in their own minds what they are arguing. A considerable portion of their brief is devoted to the proposition that there are constitutional objections quite apart from, and independent of, the occurrences of April 18 which would prevent their records from ever being reached, and to making contentions which, *inter alia,* might be said to disregard the fact that some of them are corporate rather than natural persons. They seem to argue that the judgment below affirmatively overruled these objections. Of course it did nothing of the sort, and such questions could not be before us. The most that is before us is whether, if some other proceeding hereafter occurs, the events of April 18 must, as a matter of law, prevent every department of the government and every agency, administrative, civil or criminal, from seeing these records irrespective of what rights to do so the government would otherwise have had. When the government makes the point, on the issue of appealability, that no such proceedings have been instituted, and, conceivably, never may be, appellants reply that the government is advancing "the incredible proposition that * * * unless [government] agents * * * choose to initiate proceedings to compel production of those very records, appellants should not have appellate relief from the lower Court's denial of their constitutional rights." However, it must clearly be that if there are no further proceedings no constitutional rights will have been denied.

This, it seems to us, indicates the answer to the question of appealability. We are not concerned with whether, had appellants' prayer for the return of their papers been denied, such refusal would have been appealable. Cf. Perlman v. United States, 1918, 247 U.S. 7, 38 S.Ct.

---

4. It was as a penalty that the district court did issue such an injunction in the recent case of Hinchcliff v. Clarke, D.C.N.D. Ohio, 1964, 230 F.Supp. 91. The court's stated reasons were that the wrongful seizure had put taxpayers to great expense; that the fact that the taxpayers wanted the documents back might of itself cause the government to believe that they were not innocent; that to rule otherwise would give the taxpayers but a "hollow victory;" and, finally, that the U. S. Attorney there, unlike his Department of Justice counterparts in the case at bar, showed "no contrition."

5. The court went on to say that the "penalty" should not go beyond preventing the government from gaining any advantage from its "dirty hands."

417, 62 L.Ed. 950; explained in Cobbledick v. United States, 1940, 309 U.S. 323, 328–9, 60 S.Ct. 540, 84 L.Ed. 783; Reisman v. Caplin, 1964, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459. With the only question before us whether it is to be ruled now that if some future proceeding is brought the government's rights will be affected by what took place hitherto, and with no assertion of what these proceedings will be, appellants are, at best, seeking declaratory relief before there is a controversy.

 If we should construe the district court's judgment as an affirmative declaratory ruling against appellants in any and all possible proceedings, as distinguished from a mere refusal to rule the way they requested, we are clear that it should be regarded as an interlocutory order only. This would mean that it is subject to revision by the particular judge who entered it, or by any other, in the light of the circumstances as they may eventually develop. Cf. The Haverhill Gazette Co. v. Union Leader Corp., 1 Cir., 1964, 333 F.2d 798; United States v. One 1946 Plymouth Sedan Automobile, 7 Cir., 1948, 167 F.2d 3, 8–9; see Ideal Toy Corp. v. Sayco Doll Corp., 2 Cir., 1962, 302 F.2d 623, 625. We would regard this as appropriate, but make, we may add, no suggestion as to how the court's present order should be interpreted, or whether or not it may have been sound.

 Appellants say that Di Bella v. United States, 1962, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614, indicates a contrary result. Di Bella held against appealability in a perhaps partially comparable situation. Appellants' argument is, in effect, that because none of the reasons given by the court there in support of its decision are here applicable, we should apply a reverse English. Without passing upon the correctness of appellants' premise, it is enough to say that it does not lead to the suggested conclusion.

Judgment will be entered dismissing the appeal for want of jurisdiction.