Louis Sager **HUNSUCKER, Jr.**, Plaintiff-Appellant,

v.

Robert L. **PHINNEY**, District Director of Internal Revenue, Defendant-Appellee.

No. 71–2580.

United States Court of Appeals, Fifth Circuit.

July 10, 1974.

Rehearing Denied Aug. 29, 1974.

Douglass D. Hearne, Austin, Tex., for plaintiff-appellant.

Morris Silverstein, U. S. Dept. of Justice, Tax Div., Scott P. Crampton, Asst. Atty. Gen., Carlton D. Powell, Fred B. Ugast, Act. Asst. Atty. Gen., Meyer Rothwacks, Attys., Tax Div., Dept. of Justice, Washington, D. C., William S. Sessions, U. S. Atty., San Antonio, Tex., for defendant-appellee.

Before GODBOLD, DYER and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant Hunsucker, against whom no civil or criminal proceeding was

pending, sued seeking to prohibit the use against him in any action, civil or criminal, of documentary evidence that he claims had been illegally seized. More specifically he sought pursuant to the federal declaratory judgment statute, 28 U.S.C. §§ 2201–2202, a declaration that the material was illegally seized, and, pursuant to Rule 41(e), F.R.Crim.P.,[1] return of the seized property and an order prohibiting its use as evidence against him. His suit was dismissed with prejudice, and he appeals.

These are the relevant facts, as found by the District Court. On December 23, 1967, Hunsucker's apartment was searched by agents of the United States pursuant to a search warrant issued by a United States Commissioner. Bet slips, wager recap slips, names and addresses and other items were seized. Hunsucker was arrested on the same day and charged with violations of 26 U.S.C. §§ 4901, 7203, and 7262. Subsequently the criminal action was dismissed by the U.S. Attorney, and the seized materials were turned over to an agent of the Internal Revenue Service who, on the basis of these materials, recommended that an assessment of $36,167 be made against Hunsucker for delinquent excise taxes. At the time of trial no assessment had actually been made. Prior to trial in the District Court the seized materials were returned to Hunsucker, but the IRS made and retained copies of some items.

The District Court held that it had jurisdiction and dismissed the action with

prejudice. The dismissal appears to be based on alternative conclusions that either (a) determination of whether or not the evidence was illegally seized was premature, or (b) that the search warrant was issued with an adequate showing of probable cause and was not invalidated by the subsequent decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

Hunsucker asserts that this is not a tax case but a controversy concerning search and seizure. That characterization is a necessary one because, as we discuss below, § 2201 does not confer power to enter declaratory judgments in tax cases, and the use of injunctions against assessment or collection of federal taxes is barred by 26 U.S.C. § 7421(a) (subject to certain narrow exceptions). Having attempted to remove himself from the tax field, Hunsucker seeks to obtain an early adjudication of the legality of the seizure by invoking a limited concept of supervisory and equitable powers of the court and a seldom used jurisdictional statute, 28 U.S.C. § 1356.

## A. Equitable or supervisory jurisdiction

Hunsucker contends that cases entertaining pleas for suppression and return of unconstitutionally seized property prior to any indictment establish that the District Court had jurisdiction. We hold that even if the District Court had

---

1. At the time of trial, Rule 41(e), F.R. Crim.P., provided:

(e) Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the war-

rant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing.

the power to adjudicate the issues tendered and to grant the relief requested, the exercise of that power is tempered by equitable considerations which justified the District Court's conclusion that Hunsucker's attempt to obtain relief was premature.

■ A substantial body of precedent establishes that federal district courts have power to order the suppression or return of unlawfully seized property even though no indictment has been returned and thus no criminal prosecution is yet in existence.[2] Though firmly established, this jurisdiction is an exceptional one. Judge Friendly has observed that one may search the jurisdictional statutes, 28 U.S.C. §§ 1331–1358, in vain for a grant of such power in cases where the jurisdictional amount required by § 1331(a) is not satisfied, Grant v. United States, 282 F.2d 165, 168 (CA2, 1960), and Judge Wyzanski has referred to the power as "the anomalous jurisdiction," Lord v. Kelley, 223 F.Supp. 684 (D.Mass.1963), appeal dismissed, 334 F.2d 742 (CA1, 1964), cert. denied, 379 U.S. 961, 85 S.Ct. 650, 13 L. Ed.2d 556 (1965). The theory articulated by most of the cases is that jurisdiction to order suppression or return prior to indictment exists not by virtue of any statute but rather derives from the inherent authority of the court over those who are its officers.[3]

2. See, e. g., Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931) ; In re Grand Jury Proceedings, 450 F.2d 199 (CA3, 1971), aff'd sub nom., Gelbard v. United States, 408 U.S. 41, 92 S. Ct. 2357, 33 L.Ed.2d 179 (1972) ; Smith v. Katzenbach, 122 U.S.App.D.C. 113, 351 F.2d 810, 815–816 (1965) ; Austin v. United States, 297 F.2d 356 (CA4, 1961), mandate recalled and appeal dismissed, 353 F.2d 512 (1962) ; Grant v. United States, 282 F.2d 165 (CA2, 1960) ; Eastus v. Bradshaw, 94 F.2d 788 (CA5, 1938), cert. denied, 304 U.S. 576, 58 S.Ct. 1045, 82 L.Ed. 1539 ; Foley v. United States, 64 F.2d 1 (CA5, 1933), cert. denied, 289 U.S. 762, 53 S.Ct. 766, 77 L.Ed. 1505 ; Goodman v. Lane, 48 F.2d 32 (CA8, 1931) ; United States v. Bell, 120 F.Supp. 670 (D.C.D.C.1954) ; Friedman v. Yellowley, 290 F. 248 (E.D.N.Y.1923) ; United States v. Hee, 219 F. 1019 (D.N.J.1915). *Cf.* In re Fried, 161 F.2d 453 (CA2, 1947), cert. granted, 331 U.S. 804, 67 S.Ct. 1755, 91 L. Ed. 1826, cert. dismissed, 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384 (pre-indictment suppression of confession on fifth amendment grounds).

3. The classic statement of the theory is that contained in Judge Hough's opinion in United States v. Maresca, 266 F. 713, 717 (S.D. N.Y.1920) :
> Whenever an officer of the court has in his possession or under his control books or papers, or (by parity of reasoning) any other articles in which the court has official interest, and of which any person (whether party to a pending litigation or not) has been unlawfully deprived, that person may petition the court for restitution. This I take to be an elementary principle, depending upon the inherent disciplinary power of any court of record.

> Attorneys are officers of the court, and the United States attorney does not by taking office escape from this species of professional discipline. Thus power to entertain this motion depends on the fact that the party proceeded against is an attorney, not that he is an official known as the United States attorney. It is further true that the right to move does not at all depend on the existence of this indictment; it might be made, were no prosecution pending.

See also, e. g., Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931) ; In re Grand Jury Proceedings, 450 F.2d 199 (CA3, 1971) ; Smith v. Katzenbach, 122 U.S.App.D.C. 113, 351 F.2d 810, 815–816 (1965) ; Grant v. United States, 282 F.2d 165 (CA2, 1960) ; Centracchio v. Garrity, 198 F.2d 382 (CA1, 1952), cert. denied, 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 672 ; Eastus v. Bradshaw, 94 F.2d 788 (CA5, 1938) ; Foley v. United States, 64 F. 2d 1 (CA5, 1933) ; Applybe v. United States, 32 F.2d 873 (CA9, 1929), cert. denied, 280 U.S. 594, 50 S.Ct. 39, 74 L.Ed. 641 ; Fifth Avenue Peace Parade Committee v. Hoover, 327 F.Supp. 238 (S.D.N.Y.1971) ; Silbert v. United States, 275 F.Supp. 765 (D.Md.1967) ; Rodgers v. United States, 158 F.Supp. 670 (S.D.Cal.1958), mandamus denied, see D.C., 158 F.Supp. 684 ; United States v. Bell, 120 F.Supp. 670 (D.C.D.C. 1954) ; United States v. Mahon, 42 F.2d 571 (S.D.N.Y.1930) ; Sims v. Stuart, 291 F. 707 (S.D.N.Y.1922) ; United States v. Hee, 219 F. 1019 (D.N.J.1915).

A few cases—e. g., Foley v. United States, *supra*, Smith v. Katzenbach, *supra*, and In re Fried, 161 F.2d 453 (CA2, 1947)—refer to the theoretical basis of this jurisdiction as the power of the court to "reach forward

Whether the anomalous jurisdiction extends to cases, such as this one, where the likely future proceeding is at least nominally civil in nature rather than criminal is uncertain. The theoretical basis of the jurisdiction in the court's power over its officers would seem unaffected. We have encountered only one case, however, in which it appears that the anomalous jurisdiction was exercised where the only likely future proceeding was a civil one, and in that case it was simply exercised without discussion. United States v. Blank, 261 F.Supp. 180 (N.D.Ohio 1966). Some cases suggest in passing that exercise of the jurisdiction is limited to cases of threatened criminal indictment. Thus in Lord v. Kelley, 223 F.Supp. 684, 689 (D.Mass. 1963), Judge Wyzanski stated,

> Often—perhaps usually—it will be more prudent for a trial court to await the return of an indictment before granting any relief. For in many cases the trial court may not be persuaded that the substantial risk facing the aggrieved person is a criminal prosecution, as distinguished from an administrative or civil proceeding.

See also Fifth Avenue Peace Parade Committee v. Hoover, 327 F.Supp. 238, 242 (S.D.N.Y.1971). Certainly where a criminal indictment is threatened one reason for early adjudication of the admissibility of evidence exists which is not present where only a civil proceeding is threatened: the criminal indictment itself carries a danger of stigmatization which may not be removed by a determination in the criminal trial that the evidence on which the indictment was based is inadmissible. See In re Fried, 161 F.2d 453, 458 (CA2, 1947) (opinion of Frank, J.). Hunsucker argues that even if a threatened criminal prosecution is usually necessary, the threat of an assessment for unpaid gambling taxes sufficiently resembles a threat of criminal indictment to bring this action within the cases dealing with pre-indictment suppression or return where a criminal indictment is threatened. We do not determine in this case whether exercise of the anomalous jurisdiction is limited to instances where criminal prosecution is threatened nor do we determine whether the threat of a gambling tax assessment is a surrogate for threatened prosecution. Rather, we have assumed that for one reason or the other the cases dealing with pre-indictment suppression or return are applicable here.

The documents which are the immediate subject of the present dispute are apparently in the hands of agents of the Internal Revenue Service, and the question arises whether these persons are subject to the court's power over its officers. A number of older cases suggest not,[4] but more recent cases indicate that the court's supervisory power is adequate to reach IRS agents as well as those who are traditionally regarded as officers of the court.[5] We pretermit the question and assume for purposes of this case that the District Court had su-

---

to control the improper preparation of evidence which is to be used in a case coming before it, and . . . by summary procedure [to] restrain oppressive or unlawful conduct of its own officers." Foley v. United States at 3. We doubt that the "reaching forward" image represents a distinct jurisdictional basis. Rather it appears to help define the occasions in which the power derived from authority over officers of the court should be exercised. Our resolution of this case, however, makes it unnecessary for us to finally decide here either whether jurisdiction could be maintained on a "reaching forward" theory in circumstances where the person in possession of the goods was not an officer subject to the court's direction or whether the power over officers should only be exercised where some future proceeding is contemplated before the same court. *Cf.* Eastus v. Bradshaw, *supra.*

4. See, e. g., Eastus v. Bradshaw, 94 F.2d 788, 789 (CA5, 1938); Applybe v. United States, 32 F.2d 873 (CA9, 1929); United States v. Hee, 219 F. 1019 (D.N.J.1915).

5. See, e. g., Smith v. Katzenbach, 122 U.S. App.D.C. 113, 351 F.2d 810, 816 (1965); Lord v. Kelley, 223 F.Supp. 684, 688–689 (D.Mass.1963); United States v. Bell, 120 F.Supp. 670, 673 (D.C.D.C.1954).

**34**

pervisory power over the IRS agents in possession of the documents.

■ But even if the District Court's power over its officers provides a theoretical basis for jurisdiction in this case, it does not automatically follow that this unique power should be exercised wherever it exists. Rather such jurisdiction should be exercised with "caution and restraint," [6] and "subject to equitable principles." [7] The applicability of equitable principles is the same whether the present action is viewed as one brought under Rule 41(e), F.R.Crim. P., or as one premised on the equity jurisdiction of the District Court. In either event the theoretical basis of jurisdiction to order pre-indictment return or suppression is grounded in the court's supervisory power over its officers. As the Court of Appeals for the District of Columbia Circuit has observed, Rule 41 "is a crystallization of a principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule. Alternatively the same result can be reached by a broad reading of the Rule." Smith v. Katzenbach, 122 U.S.App.D.C. 113,351 F.2d 810, 814 (1965)[8].

■ Having concluded that exercise of the anomalous jurisdiction which Hunsucker seeks to invoke is governed by equitable principles, we must inquire whether those principles warrant jurisdiction in this case. The government argues and the District Court concluded that Hunsucker had an adequate remedy at law in that he could wait until an assessment was made, pay the tax for one wager and file a claim, and if necessary a suit, for refund.[9] Hunsucker's counter-argument, that he would be required to incriminate himself in order to prevail in the refund suit, is the same argument which a majority of this Court en banc found "unpersuasive" in Lucia v. United States, 474 F.2d 565 (CA5, 1973). There was no showing that irreparable injury would result from waiting to vindicate his rights until a refund suit could be brought. The District Judge specifically found that, "The plaintiff has not presented any evidence to show that he would be irreparably injured unless granted the relief requested," and this finding was not contested on appeal. Nor since the search in issue was conducted pursuant to a warrant issued in the normal manner could we say that the action which Hunsucker seeks to attack involved a "callous disregard for . . . constitutional rights." [10] The material return of which is sought consists of copies made by the IRS of bet memoran-

6. Fifth Avenue Peace Parade Committee v. Hoover, 327 F.Supp. 238, 242 (S.D.N.Y. 1971).

7. Lord v. Kelley, 223 F.Supp. 684, 689 (D. Mass.1963), citing Centracchio v. Garrity, 198 F.2d 382 (CA1, 1952). See also Donlon v. United States, 331 F.Supp. 979, 980 (D. Del.1971) ("[A] pre-indictment motion to return evidence not tied to an existing criminal proceeding is grounded upon equitable considerations. The Court has jurisdiction . . . but in its discretion may refuse to hear it on its merits."); C. Wright, 3 Federal Practice and Procedure, Criminal § 673, p. 110 (1969) ("This [pre-indictment motions for suppression and return] is quite an anomalous jurisdiction. Recent cases have indicated that it should be exercised with caution and restraint, and that the motion should be dismissed for want of equity if the moving party has an adequate remedy otherwise or if he cannot show irreparable injury.")

8. With an exception not pertinent here, the notes of the Advisory Committee on Rules concerning Rule 41(e), F.R.Crim.P., state that the rule "is a restatement of existing law and practice."

9. We note that this is a case where at the time of trial it appeared likely that a future proceeding would be available in which Hunsucker could vindicate his rights. Indeed the threat of assessment seems to have been what prompted Hunsucker to file this action. Where no future proceeding in which the plaintiff may vindicate his rights seems likely, it becomes more difficult to find an adequate remedy at law [consider, however, the possibility of state court actions in trespass or replevin, cf. United States v. Nirenberg, 19 F.R.D. 421 (E.D.N.Y.1956)] and exercise of the anomalous jurisdiction may conceivably be appropriate. Cf. In re Grand Jury Proceedings, 450 F.2d 199 (CA3, 1971).

10. See Silbert v. United States, 275 F.Supp. 765 (D.Md.1967), in which Judge Frank

da, telephone and mileage records, sports schedules, a telephone and address book, and "face and hand signals for gin." We do not doubt that Hunsucker retains an interest in the copies sufficient to allow him to demand their return if the originals, already restored to him, were unlawfully seized. See, *e. g.,* United States v. Kraus, 270 F. 578 (S.D. N.Y.1921) (Hand, J.). But the question here is not whether he has such a right but when the legality of the seizure is to be adjudicated. The return of the originals prior to trial in the District Court forecloses the possibility that equitable intervention might have been justified on the theory that some of these materials were necessary to conduct a legitimate business or were otherwise of substantial value to Hunsucker. *Cf.* Eastus v. Bradshaw, 94 F.2d 788 (CA5, 1938). In short we find no equitable consideration which would warrant invoking the anomalous jurisdiction to adjudicate the merits of this case.

### B. 28 U.S.C. § 1356

In his complaint Hunsucker claimed jurisdiction based on 28 U.S.C. § 1356. While this claim was not pressed on appeal, we must nevertheless consider it. Section 1356 confers upon district courts "original jurisdiction . . . of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction." This section has seldom been a subject of reported litigation. The few cases existing uniformly fail to provide decisional support for finding jurisdiction under the section in this case.

In Slocum v. Mayberry, 15 U.S. (2 Wheat.) 1, 4 L.Ed. 169 (1817), Chief Justice Marshall interpreted the original Judiciary Act provision from which § 1356 is drawn. He held that where an officer of the United States was without authority to seize or hold property the courts of the United States had no jurisdiction to entertain the owner's action for relief [11] but that the state courts remained a proper forum for such actions.

One hundred forty years later the Ninth Circuit applied *Slocum* to deny a claim of jurisdiction under § 1356. In Johnston v. Earle, 245 F.2d 793 (CA9, 1957), the plaintiff brought an action for damages against agents of the IRS for alleged tortious conversion of plaintiff's tractor. The court, reasoning in part that "the complaint alleges that the seizure was *not* under any law of the United States," (original emphasis) held that § 1356 did not confer jurisdiction and that proper forum for damage or replevin actions lay in the state courts.[12] Similarly Hunsucker's allegation is that the seizure was not authorized under Rule 41, F.R.Crim.P., because probable cause was lacking. The analysis of *Slocum* as applied in *Johnston* indicates that this allegation is not cognizable under § 1356.

We have found no construction of § 1356 which would confer jurisdiction over this action. We decline to create one.

Kaufman suggests that whether the allegations of the complaint show such "callous disregard" is a factor to be considered in determining whether to exercise jurisdiction in cases involving pre-indictment suppression and return. See also United States v. Harte-Hanks Newspapers, 254 F.2d 366 (CA5, 1958), cert. denied, 357 U.S. 938, 78 S.Ct. 1385, 2 L.Ed.2d 1551 ("It is established law that suppression of evidence prior to an indictment should be considered only when there is a clear and definite showing that constitutional rights have been violated.") ; Parrish v. United States, 256 F.Supp. 793 (E.D.Va.1966), appeal dismissed, 376 F.2d 601 (CA4, 1967) (whether plaintiffs show "a clear deprivation of their constitutional rights" is a factor in determining whether equitable relief should be granted.)

11. Unless the action was one which could be entertained by the court sitting in admiralty.

12. We do not read Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to implicitly change the analysis of § 1356. As Justice Harlan's concurring opinion makes clear, jurisdiction in that case was premised on 28 U.S.C. § 1331(a). See 403 U.S. at 398, 91 S.Ct. at 2005, 29 L.Ed.2d at 628.

## C. 28 U.S.C. § 1331

Hunsucker did not contend that 28 U.S.C. § 1331 federal question jurisdiction exists in this case. We believe he was correct in not making such a contention. The only means by which Hunsucker could have satisfied the jurisdictional amount requirement would be by conceptually linking his action to the $36,000 assessment he says was threatened at the time this action was begun. But linking the threatened assessment to the present action would compel a conclusion which Hunsucker has assiduously denied, for it would imply that the present action is a controversy concerning federal taxes rather than one relating solely to searches and seizures. And if it is a tax case, it is a case in which the court lacks power to grant the declaratory relief requested,[13] and in which injunctive relief is not available absent exceptional circumstances not shown to be present here. See 26 U.S.C. § 7421(a); Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932); Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). See also, Brittingham v. United States Commissioner of Internal Revenue, 451 F.2d 315 (CA5, 1971); Koin v. Coyle, 402 F.2d 468 (CA7, 1968); Zamaroni v. Philpott, 346 F.2d 365 (CA7, 1965); Vuin v. Burton, 327 F.2d 967 (CA6, 1964). Cf. Campbell v. Guetersloh, 287 F.2d 878, 881 (CA5, 1961). Accepting Hunsucker's argument that this is not a tax case, or at least that he did not intend it to be, we are unable to find jurisdiction under § 1331.

Exercise of non-statutory equitable or supervisory jurisdiction is not warranted in this case, and we find no basis for statutory jurisdiction. The District Court correctly dismissed the action, but that dismissal should have been without prejudice to adjudication of Hunsucker's claims in an appropriate future proceeding. The judgment is amended to provide that the dismissal was without prejudice and as so amended is affirmed.

## ON PETITION FOR REHEARING

### PER CURIAM:

Appellant's Petition for Rehearing urges as two additional bases for District Court jurisdiction 28 U.S.C. §§ 1346(a)(2) and 1361. Reliance on the "Tucker Act," § 1346(a)(2), is misplaced. That Act applies only to suits for money damages while appellant seeks equitable relief. See, e. g., Wells v. United States, 280 F.2d 275 (CA9, 1960); Clay v. United States, 93 U.S. App.D.C. 119, 210 F.2d 686 (CADC, 1953), cert. denied, 347 U.S. 927, 74 S.Ct. 530, 98 L.Ed. 1080 (1954); Bower v. United States, 347 F.Supp. 1252 (W.D. Pa.1972). Assuming without deciding that § 1361 mandamus jurisdiction is potentially available, those factors found in the original opinion to preclude exercise of equitable or supervisory jurisdiction also make mandamus relief inappropriate.

---

13. The Declaratory Judgments Act excludes federal tax cases from the grant of declaratory authority. Title 28, § 2201 provides that,

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States . . . may declare the rights and other legal relations of any interested party . . . . ."

