Joseph W. **RICHEY** and wife, **Blanche Richey, Plaintiffs-Appellants,**

v.

Jack E. **SMITH, Defendant-Appellee.**

No. 74–2178.

United States Court of Appeals, Fifth Circuit.

July 21, 1975.

J. W. Tyner, Tyler, Tex., for plaintiffs-appellants.

Roby Hadden, U. S. Atty., H. Kelly Ireland, Asst. U. S. Atty., Tyler, Tex., Martin Teel, Atty., Gen. Litigation Sec., Tax Div., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Acting Chief, App. Sec., Michael L. Paup, Louis A. Bradbury, Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before WISDOM, SIMPSON and RONEY, Circuit Judges.

SIMPSON, Circuit Judge:

The appellants, J. W. and Blanche Richey, husband and wife (hereinafter Taxpayers), sued in the district court under Rule 41(e), F.R.Crim.P., for the return of property and suppression of evidence, business records of the husband, seized by Special Agent Jack Smith of the Internal Revenue Service (IRS). The complaint alleged that Special Agent Smith obtained possession of the records of Mr. Richey's business in violation of the Fourth and Fifth Amendments to the Constitution. Prior to any hearing on the merits the district court declared itself without jurisdiction of the matter and dismissed the suit without prejudice to renewal of the motion to suppress in the event that a criminal prosecution followed from the IRS investigation.[1] We find that the court below found lack of jurisdiction on erroneous grounds and remand for further proceedings in the district court.

The Taxpayers became the object of an IRS investigation on July 31, 1973, when Special Agent Smith of the IRS appeared at Mr. Richey's office and asked leave to examine certain of his business records. Subsequently that same day, Agent Smith obtained Mr. Richey's permission to remove the records to the IRS office for further examination. In support of the Rule 41(e) motion below Taxpayers allege that this permission was not a valid consent for Smith to remove the records because: (i) Smith did not inform Mr. Richey of his *Miranda* rights[2] in a meaningful fashion; and (ii) Smith threatened that he would subpoena the records if Richey did not release them voluntarily.

After consulting with an attorney, Richey delivered a letter on August 9, some ten days after delivery of the records, to Agent Smith rescinding his permission for the IRS to examine his records and demanding their return. When he was informed that his request would be taken under advisement and that, in any event, his records would not be returned until the IRS was through with them, Richey filed suit the follow-

---

1. Because the IRS had agreed to return the Richeys' records to them as soon as it had microfilmed them, the district court ruled that the motion for return of property was moot. The characterization as moot was incorrect. See the discussion in note 5, infra.

2. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

ing day. The Richeys' complaint was styled as a "Motion for Return of Property and to Suppress Evidence, for Temporary Restraining Order and Injunction".[3] Jurisdiction was alleged to lie under F.R.Crim.P. 41(e) and the Fourth and Fifth Amendments to the Constitution.

The district court immediately entered a temporary restraining order enjoining Smith and other officers and agents of the government from examining, analyzing, scheduling, or copying the Richeys' records. Subsequently, on August 28, 1973, the court ordered that the records be transferred from the custody of the IRS to the custody of the clerk of the court pending determination on the Richeys' complaint.

On November 5, 1973, the district court held a hearing limited to its jurisdiction to entertain the Richeys' motion in the absence of any pending civil or criminal proceedings. At the conclusion of that hearing, the court concluded that it was without jurisdiction. The court ruled that the motion for return of property was moot because the IRS had stipulated that it would return the Richeys' original records as soon as it had completed microfilming them. On the motion to suppress, the court ruled: (i) that no jurisdiction existed under F.R.Crim.P. 41(e) since no criminal prosecution was then pending; and (ii) that no equitable jurisdiction existed because an adequate remedy at law was available either in the form of a motion to suppress evidence should a criminal prosecution en-

sue or of a refund suit should the records be made the basis of a civil tax suit.[4] The court continued its injunction against IRS use of the records pending the issuance of written findings of fact and conclusions of law, which were entered, as amended, on April 8, 1974. In the order accompanying its opinion, the district court continued its injunction in effect against use of the Taxpayers' records by IRS pending disposition of the case on appeal. The records remain in the custody of the clerk of the district court.

■ We are faced initially with the question of whether the district court order denying the requested relief is a final order subject to appellate review under Title 28, U.S.C. § 1291. The government asserts that under the test articulated by the Supreme Court in DiBella v. United States, 1962, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614, the district court order is not appealable. In DiBella the Court was concerned with appellate review of district court orders granting or denying pre-indictment motions for suppression of evidence and/or return of property. The Court held that such orders were subject to appellate review only where (i) the motion was solely for the return of property and (ii) the motion was in no way tied to a criminal prosecution in esse against the movant. Id. at 131–32, 82 S.Ct. at 660, 7 L.Ed.2d at 621. Notwithstanding that the DiBella test would seem to be satisfied in the instant case in light of the appellants' abandonment of the motion for suppression,[5] we note that the order appealed

---

**3.** Respecting the proper form of pleading in these cases, see the advice of Judge Wyzanski in Lord v. Kelley, D.Mass.1963, 223 F.Supp. 684, 688, appeal dismissed, 1 Cir. 1964, 334 F.2d 742, cert. denied, 1965, 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556.

**4.** The court also declared that it was without jurisdiction under Title 28, U.S.C. § 1331 to enter a declaratory judgment as to the validity of the seizure since to do so would be to entertain a suit against the sovereign without its consent in violation of the doctrine of sovereign immunity.

**5.** We consider the prayers for injunctive relief to prevent examining, analyzing, scheduling, or copying of the documents as an integral part of the plaintiffs' motion for return of property. We have indicated previously that a plaintiff in a civil action for the return of property has a sufficient proprietary interest in copies of documents which have been seized to demand their return as well as the return of the originals. Hunsucker v. Phinney, 5 Cir. 1974, 497 F.2d 29, 35, cert. denied, 1975, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397. See Goodman v. United States, 9 Cir. 1966, 369 F.2d 166, 168. It follows that one entitled to

from rested solely on jurisdictional grounds and was not a ruling on the merits of the motion as was the case in *DiBella*. In these circumstances, we determine that the district court order was final and is properly before us for appellate review.[6] Accordingly, we proceed to consider the district court ruling on the jurisdictional issue.

■ This court recently undertook an extensive analysis of the issues inherent in these suits for the return of property prior to the initiation of any civil or criminal proceedings flowing from the seizure of that property. See Hunsucker v. Phinney, 5 Cir. 1974, 497 F.2d 29, cert. denied, 1975, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397. We said there that such actions are governed by equitable principles, whether viewed as based on F.R. Crim.P. 41(e) or on the general equitable jurisdiction of the federal courts. *Id.* at

34. Whether to exercise that jurisdiction in a given case is subject to the sound discretion of the district court.

■■ In *Hunsucker* we listed some of the considerations that should govern the decision by the district court whether to exercise this "anomalous" jurisdiction.[7] First, and perhaps foremost, is the question whether the motion for return of property accurately alleges that government agents—in this case agents of the IRS—in seizing the property displayed " 'a callous disregard for the constitutional rights of the taxpayer.' " 497 F.2d at 34.[8] Other factors to be considered are: whether the plaintiff has an individual interest in and need for the material whose return he seeks;[9] whether the plaintiff would be irreparably injured by denial of the return of the property;[10] and whether the plaintiff has an adequate remedy at law for the

---

the return of original documents is entitled to their return prior to and not after examination or reproduction by government agents.

6. In United States v. McWhirter, 5 Cir. 1967, 376 F.2d 102, we stated that "the definition of a final judgment is a pragmatic one". *Id.* at 105. We indicated that appellate review might be appropriate where to deny the right to appeal at a specific time would in effect deny the right to appeal at all on the specific issue. Here, failure to review the district court ruling on the jurisdictional issue at this juncture would foreclose the possibility of review altogether. In addition, because the motion for return is a discrete action, not tied to any other civil or criminal proceedings, to grant review would not frustrate the policy against piecemeal review in federal cases.

7. The characterization as "anomalous" was by Judge Wyzanski in Lord v. Kelley, D.Mass. 1963, 223 F.Supp. 684, appeal dismissed, 1 Cir. 1964, 334 F.2d 742, cert. denied, 1965, 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556.

8. For example, compare cases where the seizure of property by government agents was pursuant to a search warrant subsequently challenged as invalid, e. g., Coury v. United States, 6 Cir. 1970, 426 F.2d 1354, with those cases where government agents have allegedly engaged in fraudulent or deceitful methods in order to gain access to a citizen's private papers, e. g., Smith v. Katzenbach, 1965, 122 U.S.App.D.C. 113, 351 F.2d 810, and Lord v. Kelley, supra, note 7.

9. This factor has been significant, for example, in cases where the property whose return or suppression is sought: (i) is contraband to which the movant is not legally entitled, e. g., United States v. Jones, E.D.Tenn.1970, 317 F.Supp. 856; or (ii) consists of items for which the movant has no noteworthy need, such as bet slips or wager tickets, e. g., Donlon v. United States, D.Del.1971, 331 F.Supp. 979.

10. For example, where examination of the seized material leads to a criminal prosecution, it may not be sufficient that a motion to suppress the evidence can be filed prior to the criminal trial. As Judge Frank observed in In re Fried, 2 Cir. 1947, 161 F.2d 453, cert. dismissed, 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384:

> The government further argues that an indictment founded upon such illicit evidence will do the applicant no harm, since such evidence will not be admitted at the trial which follows the indictment. That is an astonishingly callous argument which ignores the obvious. For a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public mind, the blot on a man's escutcheon, resulting from such a public accusation of wrongdoing, is seldom wiped out by a subsequent judgment of not guilty. Frequently, the public remembers the accusation, and still suspects guilt, even after an acquittal.

161 F.2d at 458–59 (footnote omitted).

redress of his grievance.[11]   497 F.2d at 34–5.

■ Because the district court did not have the benefit of our holding in *Hunsucker*, supra, when it considered the appellants' motion, and because the court did not give independent consideration to the motion for return of property after the government's offer of return, we conclude that a remand is required for a hearing on the plaintiffs' allegations. After receiving evidence regarding the seizure of the Richeys' records the district court can decide whether to exercise its anomalous jurisdiction over the suit for return of property in light both of this opinion and of Hunsucker v. Phinney, supra, and the cases cited therein.

■ If the district court should conclude that exercise of jurisdiction is appropriate in the circumstances of this case, we note two further matters that would remain for its consideration. First is the question whether its supervisory jurisdiction extends over the activities of government agents who are not, in traditional terms, officers of the court. In Eastus v. Bradshaw, 5 Cir. 1938, 94 F.2d 788, cert. denied, 304 U.S. 576, 58 S.Ct. 1045, 82 L.Ed. 1539, we held that the supervisory jurisdiction of the court did not embrace the power to regulate the conduct of IRS agents. That case is distinguishable on its facts from the instant case, however. *Eastus* involved a motion by the taxpayer to suppress as evidence both memoranda and statements which he had furnished agents of the IRS as well as stenographic copies of statements he had made to IRS agents under questioning. In declining to assert its supervisory jurisdiction over the IRS agents, the court noted that the taxpayer's motion was not for the return of "valuable property" but was solely concerned with the admissibility of evidence. *Id.* at 789. Here, the motion is solely for the return of property, and it cannot be said that a taxpayer's business records are not "valuable property". In addition, the holding in *Eastus* has been called into question by more recent court decisions.[12]

11. As the Supreme Court has implied on more than one occasion, the notion of adequacy of remedies for Fourth Amendment violations must be viewed restrictively. Where there is a pending criminal action, the prime remedy is the exclusory rule. In discussing the limitations of the rule, the Court noted in United States v. Calandra, 1974, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561:

> The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim:
>
> "[T]he ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late." Linkletter v. Walker, 381 U.S. 618, 637, 85 S.Ct. 1731, 1742, 14 L.Ed.2d 601 (1965).
>
> Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable search and seizures:
>
> "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960).

*Id.* at 347, 94 S.Ct. at 619–20, 38 L.Ed.2d at 571.

Where, as here, the records have merely been seized and there is no pending criminal action, the deterrent policies underlying the exclusionary rule may not be as significant as the interest of the court in securing compliance with constitutional procedures by law enforcement agents. See Rea v. United States, 1956, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233, where the Court stated:

> The obligation of the federal agent is to obey the * Rules.** They are drawn for innocent and guilty alike. They prescribe standards for law enforcement.
>
> They are designed to protect the privacy of the citizen, unless the strict standards set for searches and seizures are satisfied. That policy is defeated if the federal agent can flout them and use the fruits of his unlawful act either in federal or state proceedings. *Id.* at 217–18, 76 S.Ct. at 294, 100 L.Ed. at 237.

*[Federal]

**[of Criminal Procedure].

12. See Hunsucker v. Phinney, 497 F.2d at 22, nn. 4 and 5 and accompanying text. See also the statement of the Supreme Court in Rea v. United States, 1956, 350 U.S. 214, 217–18, 76 S.Ct. at 294, 100 L.Ed. at 237, quoted in note 11, supra.

We do not mean to imply that such supervisory jurisdiction should be exercised as a routine matter, but we do hold that its exercise may be justified in the circumstances of this case if the plaintiffs' allegations are substantiated. As noted above the jurisdiction is an equitable one. With respect to law enforcement agencies, while its exercise should be with restraint, it should not be without regard for the necessity of following constitutional procedures.

The district court may have to decide after remand the nature of the relief to be granted should the appellants prevail. Rule 41(e), supra, directs that the granting of a motion for return of property shall operate also as an order suppressing the use of the evidence in any future hearing on trial. It seems clear, however, that a motion prior to any suggestion of criminal proceedings, as here, is more properly considered simply as a suit in equity rather than one under the Rules of Criminal Procedure. Cf. Hunsucker v. Phinney, supra. So viewed, return of the property would not necessarily entail suppression for the purposes of further court proceedings. We direct the district court's attention to the approach of Judge Wyzanski in Lord v. Kelley, D.Mass.1963, 223 F.Supp. 684, 690–91, appeal dismissed, 1 Cir. 1964, 334 F.2d 742, cert. denied, 1965, 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556. There, the court ordered the return of the taxpayer's records but refused to order their suppression as evidence in future proceedings. In fashioning this relief, Judge Wyzanski noted that: (i) the IRS agents knew of the existence of the records prior to their seizure; and (ii) the IRS agents in fact had a signed summons ordering production of the records at a future date and could have, had they waited, obtained the records by lawful means. He concluded that the taxpayer was entitled "to be as well off as if [the IRS agent] had not unlawfully seized those papers, but he is not entitled to be any better off". *Id.* at 691. As in all equitable actions, the informed discretion of the district court must be the key.

The prior order of the district court is, therefore, vacated, and the cause is remanded with directions to conduct a hearing at which the appellants may present evidence in support of their allegations of violation of their constitutional rights by IRS agents in order to gain access to their business records. The district court should thereupon decide whether to exercise its equitable jurisdiction to order the return of the records to the taxpayers under the guidelines we have set forth.

Vacated and remanded with directions.