**In the Matter of $89,000, PLUS OR MINUS, IN UNITED STATES CURRENCY AND CHECKS**

v.

**Rodrigo O. RICON and Jorge J. Castano, Movants.**

**Civ A. No. 1:87–CV–2000–JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

June 21, 1988.

Jane Wilcox Swift, Office of U.S. Atty., Atlanta, Ga., for respondent.

Alan Zev Eisenstein, Sheffield & Eisenstein, Atlanta, Ga., for movants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on petitioners Jorge Juan Castano and Rodrigo O. Rincon's petition pursuant to Fed.R.Crim.P. 41(e) for return of property and respondent United States of America's motion to dismiss. Fed.R.Crim.P. 12(b).

## I. STATEMENT OF FACTS.

The subject property, designated as "$89,000 plus or minus, in United States currency and checks" and hereinafter referred to as "the defendant funds," was seized from petitioners June 4, 1987 at the Atlanta Hartsfield International Airport by agents of the Drug Enforcement Administration (DEA). Seven different seizure numbers were assigned the defendant

funds; consecutive numbers were assigned the currency seized from each petitioner while individual numbers were assigned each of the five cashier's checks seized from petitioner Castano.[1] For convenience, the court adopts a modified version of the seizure chart developed by respondent:

| DEA Seizure No. | Seized Funds | Seized From |
|---|---|---|
| 25549 | $20,210 in U.S. currency | Castano |
| 25550 | $25,490 in U.S. currency | Rincon |
| 25556 | $9,800 cashier's check (Juan Gonzalez, payee) | Castano |
| 25567 | $9,800 cashier's, check (Javier Cuartas, payee) | Castano |
| 25608 | $4,800 cashier's check (Salamon Pineda, payee) | Castano |
| 25609 | $9,000 cashier's check (Manuel Dominguez, payee) | Castano |
| 25612 | $9,500 cashier's check (Juan Rivero, payee) | Castano |

Administrative forfeiture proceedings were commenced in June and July of 1987. 21 U.S.C. § 881; 19 U.S.C. § 1602-1619; 21 C.F.R. 1361.71-81. To this end, each seizure was advertised in *USA Today* for three consecutive weeks beginning July 29, 1987.[2] In addition, notice of the pending forfeiture proceedings were sent to petitioner Castano at the Boston, Massachusetts address and petitioner Rincon at the Houston, Texas address given to the seizing DEA agents by petitioners.[3] Notice was likewise sent to petitioners at both the Clayton County and Douglas County Jails.[4] In all cases where the mails were utilized, however, service of notice on petitioners was apparently unsuccessful.[5] In any event, no claim to any of the defendant funds was ever filed.

1. No cashier's checks were seized from petitioner Rincon.

2. With the exception of seizure number 25556 which was so advertised beginning July 8, 1987.

3. The address given the agents by petitioner Castano was apparently fabricated. The notice sent to that address was returned stamped "Unknown." Respondent's Exhibit A(3). Similarly, the notice sent petitioner Rincon at his Texas address was returned stamped "moved, left no address." Respondent's Exhibit B(8).

Petitioners challenge the sufficiency of notice on three grounds. First, it is alleged that as early as July 15, 1987, respondent had actual notice of the availability of petitioners' counsel for service. Indeed, it is clear from the record that DEA Special Agent Bob Johnson did receive from petitioners' counsel a letter dated July 14, 1987 wherein counsel advised that he was authorized to accept service of process in any forthcoming forfeiture proceeding. Respondents' Exhibit I(1). The letter was forwarded to the Washington, D.C. office of the DEA July 24, 1987. *Id.* Second, petitioners argue that respondent knew or should have known that petitioners had been released from the Clayton County Jail weeks prior to the mailing of notice to that facility. Finally, it is asserted that none of the payees named on the five seized cashier's checks were served with notice of the pending forfeiture proceedings.

## II. CONCLUSIONS OF LAW.

### A. *Seizures 25549; 25550; 25608; 25609; and 25612.*

Forfeiture proceedings concerning the above-captioned seizures have been stayed pending consideration of the present motions. Moreover, respondent has consented to allow petitioners twenty days from entry of this order in which to file claims and post the requisite bonds. Brief at 7, n. 2. For this reason, the court believes it appropriate that petitioners challenge the legality of the above-captioned seizures in the administrative system designed for such purposes. *Castleberry v. Alcohol, Tobacco and Firearms*, 530 F.2d 672, 674-75 (5th Cir.1976) (the legality of a seizure is to be determined in a forfeiture proceeding and not in a collateral action).

4. Petitioners were housed at the Clayton County Jail upon their arrest at the time of the seizure. It is unclear, however, whether either was ever housed at the Douglas County Jail.

5. Notice mailed to petitioner at the Clayton County and Douglas County Jails was either returned or retained without any indication of service.

Accordingly, as to the seizures captioned above, petitioners' motion for return of property is DENIED and the government's motion to dismiss is GRANTED.

### B. *Seizures 25556 and 25567.*

As to the above-captioned seizures, the parties' motions are not subject to such easy disposition. The funds represented by these seizure numbers, both cashier's checks, were declared forfeited to the United States on October 3 and 5, 1987, respectively. Respondent's Exhibit H(1–2). Petitioners claim that these forfeitures are invalid on the aforementioned notice grounds.

#### 1. Fed.R.Crim.P. 41(e).

■ As noted above, petitioners base their "Motion for Return of Property Illegally Seized and Illegally Held" on Criminal Rule 41(e). This rule provides in relevant part:

A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial.

Respondent argues that Rule 41(e) cannot support petitioners' motion. Brief at 5. The court agrees. Rule 41(e) applies only to criminal proceedings and is expressly made inapplicable to forfeiture of property for violation of a statute of the United States. Fed.R.Crim.P. 54(b)(5); *see also In the Matter of $49,065.00 in United States Currency,*[6] No. 87–1680 (N.D.Ga. Nov. 18, 1987) (Hall, J.) (district court does not have jurisdiction to return seized property pursuant to Rule 41(e)); *United States v. Rapp,* 539 F.2d 1156, 1160 (8th Cir.1976) (Rule 41(e) provides no jurisdictional basis for civil action). This is not to say that petitioners have no avenue of relief available to them, however. Rule 41(e) is a "crystallization of a principle of equity jurisdiction [which] persists as to situations not specifically covered by the rule." *Hunsucker v. Phinney,* 497 F.2d 29, 34 (5th Cir.1974). Thus, where, as here, there is no "suggestion of criminal proceedings," a Criminal Rule 41(e) motion "is more properly considered simply as a suit in equity rather than one under the Rules of Criminal Procedure." *Richey v. Smith,* 515 F.2d 1239, 1245 (5th Cir.1975). Thus, petitioners' Rule 41(e) motion is hereby converted into a civil petition for equitable relief.

#### 2. Equity Jurisdiction.

As the foregoing discussion implies, "federal district courts have power to order the ... return of unlawfully seized property," *Hunsucker* at 32, grounded in their supervisory authority "over those who are [their] officers."[7] *Id.* at 34. "Though firmly established, this jurisdiction is an exceptional one," *id.* at 32, and should be exercised with caution and restraint. *Id.* at 34. *Resmondo* at 19–20. The decision whether to exercise this extraordinary jurisdiction is subject to the sound discretion of the district court. *Richey* at 1243. In

---

**6.** A copy of this order is attached to respondents' motion to dismiss as Exhibit J.

**7.** In *Hunsucker* and *Richey,* the former Fifth Circuit, in *dicta,* made known its belief that a district court's supervisory power is adequate to reach IRS agents as well as those who are more traditionally regarded as "officers of the court." *Hunsucker* at 33; *Richey* at 1244. The issue was resolved two years later in *Mason v. Pulliam,* 402 F.Supp. 978 (N.D.Ga.1975), *aff'd,* 557 F.2d 426 (5th Cir.1977), where the Fifth Circuit affirmed the district court's exercise of its anomalous jurisdiction over agents of the IRS. *See also Resmondo v. United States,* 536 F.Supp. 19,

20 (S.D.Fla.1981) (special agents of the IRS are considered to be officers of the court for jurisdiction analysis). Though this court has found no cases in this circuit extending this jurisdiction over agents of the DEA, some courts in this district have indicated their willingness to do so. *See, e.g., In the Matter of $49,065.00* (Hall, J.); *In Re: $15,875.00 in United States Currency,* No. 87–922 (N.D.Ga. Nov. 9, 1987) (Evans, J.) [available on WESTLAW, 1987 WL 48216]. Based on this authority, the court concludes that DEA agents, like IRS agents, are "officers of the court" for the purposes of the court's equity jurisdiction.

reaching this decision, the district court is governed by equitable principles, *Hunsucker* at 34, and should exercise its jurisdiction only "in those cases where equity demands [its] intervention." *Resmondo* at 20. "The court must inquire whether [the equitable principles governing the exercise of this jurisdiction] warrant jurisdiction in the case before it;" that is, the court must determine whether equitable considerations exist "which would warrant invoking the anomalous jurisdiction to adjudicate the merits of the case." *Hunsucker* at 34–35.

In an effort to aid the district courts in this determination, the former Fifth Circuit has identified several factors which may be considered in addition to the more general principles of equity.

> Some of the considerations that should govern the decision by the district court whether to exercise this "anomalous" jurisdiction [are] (1) whether ... the government agents ... in seizing the property displayed a callous disregard for the constitutional rights of the [petitioner]; (2) whether the [petitioner] has an individual interest in and need for the material whose return he seeks; (3) whether the [petitioner] would be irreparably injured by denial of the return of the property; and (4) whether the [petitioner] has an adequate remedy at law for the redress of his grievance.[8]

*Richey* at 1243–44; *United States v. Chapman,* 559 F.2d 402, 406 (5th Cir.1977). As a preliminary matter, the court notes that petitioners failed to address the above-enumerated considerations in either their petition or their response to respondent's motion to dismiss.[9] Instead, they appear to take the position that requiring that they meet their burden under *Richey* at this time is "premature." Response at 6, 7. The court need not consider this argument, however, because it declines to exercise its equity jurisdiction on other grounds.

As noted previously, respondent attempted to notify petitioners of the pending forfeiture proceeding in three ways: (1) notice mailed to the Boston address given the seizing DEA agents by petitioners; (2) notice mailed to the institution wherein petitioners were housed following their arrest; and (3) notice by publication in *USA Today* for three consecutive weeks. It is petitioners' position that the notice mailed to the Douglas County and Clayton County Jails is insufficient because the government knew or should have known that petitioners had some time earlier been released from custody. Similarly, it is argued that notice by publication is insufficient because special agent Johnson of the DEA had received counsel's letter regarding his availability "to accept service of process."[10] Conspicuously missing is any reference to the mailing of notice to the addresses given the seizing agents by petitioners.

■ The record indicates that notice was mailed to petitioner Castano—from whom all the forfeited funds were seized—at the Boston address given the DEA agents on two occasions: as to seizure number 25556 on June 28, 1987; and as to seizure number 25567 on July 13, 1987. As previously mentioned, this address proved to be false when both notices were returned stamped "unknown." Petitioners now seek to avoid the consequences of providing the seizing agents with false information by challeng-

---

8. Compare these considerations to those prerequisite to injunctive relief. *See Harris v. Wilters,* 596 F.2d 678, 680 (5th Cir.1979). Though a party seeking an injunction has traditionally been made to demonstrate a substantial likelihood of success on the merits; an inadequate remedy at law; etc., *id.,* the court's decision whether to grant such relief is likewise governed by general principles of equity. *See, e.g., American Hospital Supply v. Hospital Products, Ltd.,* 780 F.2d 589, 601 (7th Cir.1986) ("Clean hands" doctrine applies to preliminary injunctions). This is likewise the case with the exercise of anomalous jurisdiction. *Hunsucker* at 34; *Resmondo* at 20.

9. Petitioners do draw the conclusion, however, that since "no drugs or other contraband were seized with or located in the vicinity of the [defendant funds]," the seizure was effected with "callous disregard for the petitioners' constitutional rights." Response at 5–6.

10. As to seizure number 25556, notice by publication began July 8, 1987; as to seizure number 25567, notice by publication began July 29, 1987. Counsel's letter was dated July 14, 1987.

ing the government's other two attempts to serve notice. The court will not allow this. As has been previously established, the decision whether to exercise anomalous jurisdiction is governed by general equitable principles. The court finds the following dispositive: "He who comes into equity must come with clean hands."

This time-honored maxim was discussed at length by the Supreme Court in *Precision Company v. Automotive Company*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Justice Murphy, writing for the majority, observed that the "clean hands" doctrine,

> Is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abetter of inequity." Thus, while "equity does not demand that its suitors shall have led blameless lives" as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. (Citations omitted).

*Precision Company* at 814–15, 65 S.Ct. at 997–98. Whatever purpose petitioners hoped to serve by providing false information to the DEA, they will not now be heard to complain that they received no notice of the forfeiture proceedings. The court finds that respondent's attempts to notify petitioners were reasonably calculated to apprise them of the pendency of the forfeitures. *Robinson v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972).[11] As noted by Judge Evans, where sufficient steps are taken to provide notice, "the government is not required to track down persons whose property is the subject of forfeiture proceedings." *In Re: $15,-875.00,* No. 87–922 (N.D.Ga. Nov. 9, 1987).

For the reasons set forth above, the court declines to exercise jurisdiction over petitioners' claims regarding seizure numbers 25556 and 25567. Accordingly, respondent's motion to dismiss is GRANTED.

### III.  CONCLUSION.

In sum, respondent's motion to dismiss is GRANTED. Petitioners shall be allowed twenty (20) days from receipt of this order in which to file claims and cost bonds as to seizure numbers 25549, 25550, 25608, 25609 and 25612.

---

**11.** Petitioners rely on *Robinson* for the proposition that where "publication notice [is] attempted during a period of time when the government [is] expressly aware that counsel [is] authorized to acknowledge service of any forfeiture action, [it] is inadequate." Response at 4. This argument overlooks the fact that notice was also sent to the addresses given the DEA by petitioners; but in any event, *Robinson* is easily distinguished. In that case, notice of forfeiture was sent to the petitioner's residence when the government was aware that he was incarcerated pending trial. No other manner of notice was attempted, prompting the Supreme Court to find that notice was not reasonably calculated to apprise the petitioner of the pending forfeiture proceeding.