Bradley PIEPER, d/b/a Bradley Exterminating Company, Appellant,

v.

UNITED STATES of America, Environmental Protection Agency and Robert Leis, Environmental Protection Agency Employee, Appellees.

No. 78–1884.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1979.

Decided Aug. 30, 1979.

David J. Morgan, San Mateo, Cal., for appellant.

Nancy B. Firestone, Atty., App. Section, U. S. Dept. of Justice, Washington, D. C., argued; Joan Z. Bernstein, Washington, D. C., General Counsel, Thomas F. Harrison, Regional Counsel, David M. Sims, Asst. Regional Council, U. S. Environmental Protection Agency, Chicago, Ill., Sanford Sagalkin, Acting Asst. Atty. Gen., Washington, D. C., Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., Bradford F. Whitman, Edward Shawaker, Nancy B. Firestone, Attys., Dept. of Justice, Washington, D. C., of counsel, for appellees.

Before GIBSON, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

This is an appeal from the District Court of the District of Minnesota of the dismissal of motions to quash a search warrant, suppress seized evidence and enjoin further investigatory interviewing by agents of the Environmental Protection Agency (EPA). The sole issue on appeal is whether the District Court erred in refusing to invoke its equitable jurisdiction over the matter. We affirm.

In July of 1978, the EPA received information of a possible pesticide misuse by Bradley Pieper, who does business as the Bradley Exterminating Company. This information indicated that Pieper had applied a registered pesticide for a use "inconsistent with its labeling" in violation of Section 12(a)(2)(G) of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136j(a)(2)(G). Based on this information, Inspector Leis of the EPA went to Pieper's offices on July 24, 1978, and requested to see the company's records for the previous two months for the purpose of determining if other instances of misuse were occurring. The appellant offered to show the Inspector his records regarding the incident of which Leis already had knowledge but denied Leis permission to examine other business records.

A week later, on July 31, 1978, Inspector Leis returned with a search warrant obtained from a federal magistrate authorizing him to examine "evidence of mailings, books, records, papers, receipts and documents reflecting suspected illegal applications of pesticides." The warrant, issued on the basis of Inspector Leis's affidavit describing the suspected violation of which he had been informed, did not limit the records to be searched.

Upon presenting the warrant, Leis was met with the vigorous protests of the appellant's wife. She was subsequently arrested by the United States Marshal, who had accompanied Leis to the office. Meanwhile, Leis had proceeded to locate a file drawer containing the company's customer records, bundled by month, from January of 1977 to July of 1978. He determined to seize all nineteen months' records and remove them for inspection at the EPA's facilities.

In reviewing these records, Inspector Leis discovered evidence of over two hundred other possibly illegal applications of pesticides. He retained the documents reflecting this evidence and returned the remainder of the seized documents, along with photocopies of the retained records, to the appellant on August 18, 1978. The Inspector also continued his investigation by interviews of appellant's past and present customers in which he allegedly made derogatory remarks about Pieper's methods of doing business.

On September 11, 1978, prior to the initiation of any civil or criminal proceedings against him,[1] Pieper filed this action in the

---

1. The Environmental Protection Agency interprets Section 14 of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136l, as subjecting pesticide applicators, such

District Court seeking the suppression of the evidence, the return of the seized documents and an injunction prohibiting the EPA from conducting further investigation involving defamatory interviews with his customers. On the basis of submitted affidavits and a hearing, the District Court issued its Memorandum and Order denying Pieper's requested relief on October 31, 1978.[2] This appeal follows.

Pieper's central contention on appeal is that the District Court abused its discretion by failing to exercise its equitable jurisdiction to quash the search warrant and suppress the evidence obtained under it.

■ We begin by noting that the District Court's equitable jurisdiction to suppress illegally obtained evidence before an indictment has been issued has been firmly established. However, the jurisdiction is an extraordinary one and is to be exercised with caution and restraint. *Meier v. Keller,* 521 F.2d 548, 554 (9th Cir. 1975), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976), and *Hunsucker v. Phinney,* 497 F.2d 29, 32, 34 (5th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). As we noted in *United States v. Rapp,* 539 F.2d 1156, 1160–1161 (8th Cir. 1976):

This independent anomalous jurisdiction extends to federal law enforcement officers who have failed to observe standards for law enforcement established by federal rules governing searches and seizures.

* * * The purposes for which a court may exercise its general equity jurisdiction are twofold: (1) to suppress evidence prior to indictment—to " * * * reach forward to control the improper preparation of evidence which is to be used in a case coming before it * * *" and (2) to deter unlawful conduct of law enforcement officials through the exclusion of evidence obtained illegally—"* * * by summary procedure restrain oppressive or unlawful conduct of its own officers." [Citations and footnotes deleted.]

■ To effectuate these purposes, the District Court considered three factors in determining whether to invoke its jurisdiction. These factors were (1) whether there had been a clear showing of a search and seizure in callous disregard of the Fourth Amendment, (2) whether the plaintiff would suffer irreparable injury if relief is not granted, and (3) whether the plaintiff is without an adequate remedy at law. These factors were discussed with approval by the Fifth Circuit in *Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir. 1975), and *Hunsucker v. Phinney, supra.*[3] We agree that they are appropriate considerations for the District Court and do not understand Pieper to be challenging this aspect of the District Court's opinion.

What Pieper does challenge is the District Court's conclusion that the factors weighed did not tip the balance in his favor. More specifically, Pieper contends that the evi-

---

as Pieper, to either civil or criminal penalties. We take it from Pieper's contention that Sections 8 and 9 of the Act do not apply to him, *see infra* n. 4 and text accompanying, that he would also contest the applicability of Section 14 to applicators like himself. The 1978 amendments to the Act, which were not in effect at the time of this incident, do much to clear up the ambiguity of the old law regarding the status of those who merely apply pesticides. *See, e.g.,* Federal Pesticide Act of 1978, Public Law 95–396, § 1, 92 Stat. 819 (1978) (codified in Section 2 of FIFRA, 7 U.S.C. § 136).

**2.** The order was without prejudice to Pieper's right to raise the legality of the search and seizure in any later criminal proceeding.

**3.** The only other consideration listed by the Fifth Circuit was "whether the plaintiff has an individual interest in and need for the material

whose return he seeks." *Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir. 1975). In a footnote, that Court explained that

[t]his factor has been significant, for example, in cases where the property whose return or suppression is sought: (i) is contraband to which the movant is not legally entitled, * * * or (ii) consists of items for which the movant has no noteworthy need, such as bet slips or wager tickets[.] [Citations omitted.]

*Id.* at n. 9.

Here, however, as Pieper has a legitimate individual interest in his company's work tickets and those tickets (or photocopies thereof) have already been returned to him, this factor is not significant.

dence was clearly seized in callous disregard of his Fourth Amendment rights in that FIFRA does not authorize the issuance of search warrants for the inspections of the records of pesticide applicators but only for the records of pesticide manufacturers or distributors.[4] He further contends that, without statutory authorization, the search warrant can no longer be considered an administrative warrant but must be viewed under the more exacting standards applicable to traditional Fourth Amendment criminal warrants. When so viewed, he contends that the warrant is clearly invalid as being overbroad.

■ We cannot say that his contentions are without merit. We note that even assuming that FIFRA applies to applicators such as the appellant (a question which we do not here decide), there are still serious problems with this search. When a warrant, be it administrative or criminal, is issued for the inspection of business records on the basis of one suspected violation, the warrant must express, with some degree of particularity, the dates of the records sought. Here, the warrant was issued without any such limitation and, on the basis of knowledge of only one suspected violation, the EPA seized all of the available records, covering some nineteen months of operation.

■ However, we need not reach the question of whether the District Court abused its discretion in failing to characterize the apparent infirmities of this search as a callous disregard of Pieper's constitutional rights. This is because it is now clear that Pieper has an adequate remedy at law and will not suffer irreparable harm if he is forced to pursue that remedy.

Typically, the equitable jurisdiction sought to be invoked here is requested by those for whom criminal indictment based on allegedly illegally seized evidence appears imminent. Relief is sought at the pre-indictment stage in order that the accused might be spared the irreparable harm of a stigmatic criminal indictment. *See Richey v. Smith, supra,* at n. 8. While, in most situations, the remedy of a post-indictment motion to suppress under Rule 41(f) of the Federal Rules of Criminal Procedure is adequate, it is felt that persons should not suffer the indelible stigma of a criminal indictment if that indictment is based solely on evidence obtained through gross government misconduct. However, it cannot be said that the initiation of the typical civil action against an individual carries a similar stigma amounting to an irreparable harm compelling the invocation of this extraordinary jurisdiction.

Here, at the time of the District Court's opinion, the EPA could have proceeded with either a civil or criminal action against Pieper. By the time of this appeal, however, the EPA had initiated an administrative action against him and the threat of criminal proceedings is now de minimus. Further, Pieper's answer to the EPA's administrative complaint fully raised the issue of the legality of the search and seizure. Finally, the EPA's final determination in that case will be reviewable in this Court under Section 16(b) of FIFRA, 7 U.S.C. § 136n(b). Thus, the appellant has an adequate legal remedy and he will not suffer irreparable harm if equitable relief is denied.[5] For these reasons, we cannot say

---

**4.** Pieper's argument focused on the language of Sections 8 and 9 of FIFRA, 7 U.S.C. §§ 136f, 136g. He claims that an applicator, such as himself, is not a "producer, distributor, carrier, dealer, or any other person who sells or offers for sale, delivers or offers for delivery any pesticide or device subject to this Act" within the meaning of Section 8(b) which authorizes the inspection of certain records. *See* n. 1, *supra.* He also claims, somewhat baldly, that a warrant issued for a search for evidence of the use of a pesticide in a manner inconsistent with its

labeling (as opposed to other types of violations of the Act) is not encompassed by the warrant provisions in Section 9(b) of the Act. For the reasons stated in the opinion, we do not consider these contentions.

**5.** Pieper also contends that he was harmed by Inspector Leis's investigatory interviews with his present and former clients. He bases this claim on the affidavits of two of his clients who found in the Inspector's remarks the implication that Pieper's business was disreputable. Pieper offered no evidence of actual injury as a

that the District Court abused its discretion in refusing to invoke its equitable powers to suppress the evidence at this early date.

We affirm.

result of these interviews. The District Court did not address this contention except to deny the motion for injunctive relief. We agree that the motion was properly denied.