**In the Matter of the SEARCH OF 4801 FYLER AVENUE, etc.**

**The KIESEL COMPANY, INC., Appellee,**

v.

**Kimberly HOUSEHOLDER, Special Agent, Federal Bureau of Investigation, et al., Appellant.**

No. 88–1573.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 20, 1988.

Decided July 13, 1989.

Rehearing and Rehearing En Banc Denied Sept. 7, 1989.

Richard J. Leon, Washington, D.C., for appellant.

David V. Capes, St. Louis, Mo., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The United States appeals from a district court order requiring the return of property seized during execution of a search warrant against the Kiesel Company. The warrant, issued by another district judge, was ruled constitutionally overbroad because it described virtually all property on the Kiesel premises, both business and personal. Although Kiesel had sought relief under Federal Rule of Criminal Procedure 41(e), the district court instead asserted "anomalous" jurisdiction and proceeded in equity. As a result the district court did not permanently suppress the evidence, but instead required only that the government return the evidence to Kiesel and not use it at trial unless a proper warrant had been used to again seize the property. We reverse the order of the district court.

I.

The United States, following an extensive investigation by Federal Bureau of Investigation agent Kimberly Householder into possible violations by Kiesel of federal environmental law,[1] applied to a federal district judge for a warrant to search the Kiesel business premises at 4801 Fyler Avenue, St. Louis. Agent Householder presented a lengthy affidavit to support the application, and the warrant was issued. It is not disputed that the scope of the warrant was extremely broad.[2]

---

1. The investigation particularly focused on criminal violations of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(d), the Clean Water Act, 33 U.S.C. §§ 1311, 1319(c)(1) & (2), the Rivers and Harbors Appropriation Act, 33 U.S.C. §§ 407, 411, and the Toxic Substances Control Act, 15 U.S.C. §§ 2614, 2615(b). Violators of any of these sections are subject to fines and imprisonment, with varying degrees of severity. RCRA violations are felonies.

2. The district court set forth in its order three paragraphs that it found to be representative:
   3. Any correspondence, records, files, work orders, logs, or other documents, includ-
ing computer storage media, relating to receipt, storage, blending, transfer or disposal of hazardous wastes and hazardous waste constituents, oil, waste oil, hazardous waste, fuel, and PCBs.
   * * *.
   12. Kiesel Oil's Articles of Incorporation, corporate by-laws, and Board of Director's meeting minutes, or any other documents demonstrating the existence of any other company or joint venture in which Larry Gooden, Lorraine "Pat" Kiesel or other Kiesel Oil employees are or were participants or partners, or in which any of these individuals have an ownership interest, which companies or joint ventures are involved in the handling of oil,

The search warrant was executed on February 29, 1988 by agents of the FBI and the Environmental Protection Agency, and the search took several days to complete. Eighty to one hundred boxes of records were seized. Kiesel responded by filing a motion for the return of the property under Federal Rule of Criminal Procedure 41(e). The district court ordered a prompt hearing, and the issues were thoroughly briefed.

The district court declined to order the government to return the property under Rule 41(e), looking to *Rickert v. Sweeney,* 813 F.2d 907 (8th Cir.1987) to support its view, as Rule 41(e) would require suppression of the property even where there had not been an indictment or other proceeding instituted. It chose to consider the matter as one in equity subject to the court's anomalous jurisdiction, "following the apparent route of *Rickert.*" It did not, however, determine if traditional equitable requirements were met, but simply proceeded to the merits. Evaluating the warrant, the district court conceded that the suspected criminal activity was of such a complexity that some latitude was allowable in the descriptions of the property to be seized.[3] Finding the warrant to authorize an all encompassing search, the court declared it unconstitutionally overbroad. It ordered the FBI to return to Kiesel all property taken under the authority of the warrant and enjoined the use of that property and information derived from it in any criminal investigations, but specified that the order was without prejudice. The government could thus once again seize and use any of Kiesel's property if it obtained a narrower warrant.

The government appeals. It argues that the warrant was not overbroad because probable cause to suspect a substantial pattern of illegality has been established, and the principles of *United States v. Kail,* 804 F.2d 441 (8th Cir.1986), therefore apply. It points out that due deference should be accorded the ruling of the first district judge who issued the warrant. It also claims that the district court was wrong to exercise equitable jurisdiction without considering the factors set forth in *Pieper v. United States,* 604 F.2d 1131 (8th Cir.1979). Finally it argues that the officers executing the warrant acted in good faith, and that *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), therefore requires dismissal. We have ordered the FBI's affidavit to be unsealed, and both parties have been given the opportunity to submit additional comments based upon its contents.

## II.

We begin by discussing the district court's procedural approach to this case. It properly considered Kiesel's claim as an equitable proceeding rather than a Rule 41(a) motion. "[A] motion prior to any suggestion of criminal proceedings, as here, is more properly considered as a suit in equity rather than one under the Rules of Criminal Procedure." *Richey v. Smith,* 515 F.2d 1239, 1245 (5th Cir.1975). Having decided this, however, the district court failed to evaluate whether the circumstances of the case warranted the exercise of equitable jurisdiction. Our decision in *Pieper,* 604 F.2d at 1133, holds that such jurisdiction is proper only upon a showing of callous disregard of the fourth amendment, irreparable injury if relief is not granted, and lack of an adequate remedy at law. *See also Richey,* 515 F.2d at 1243–44; *Hunsucker v. Phinney,* 497 F.2d 29, 34–35 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). *Pieper,* as well as its supporting authority, found such a showing necessary to establish "anamolous jurisdiction" so as to give it authority to proceed. In contrast, after

---

waste oil, hazardous waste fuel, hazardous waste or PCBs.

13. Any correspondence, files, records, checking or savings accounts, financial records, or other documents, including computer storage media, relating to the companies referenced in paragraph [12].

*Kiesel Co. v. Householder,* No. 88 Misc. 75, slip op. at 4 (E.D.Mo. Apr. 7, 1988).

3. The court specifically declined to unseal the affidavit and conduct a hearing, as in *Rickert,* but its order discussing the scope of the warrant makes specific reference to the affidavit.

indictment exercise of the court's jurisdiction is specifically authorized by Rule 41(e) of the Federal Rules of Criminal Procedure.

The district court, however, made no such analysis and considered none of these factors, instead asserting that the only issue to be decided was the specificity of the search warrant itself. It relied on *Rickert v. Sweeney*, 813 F.2d 907 (8th Cir.1987), and *In re Grand Jury Proceedings*, 716 F.2d 493 (8th Cir.1983), evidently believing that these cases obviated the need to consider the three *Pieper* factors. We do not read *Rickert* and *Grand Jury Proceedings* so broadly. Neither contains an explicit discussion of application of the three *Pieper* factors, but the opinions do not reveal that this issue was raised by the parties or considered by either the district court or this court in those cases. Our recent decision of *In re Harper*, 835 F.2d 1273, 1275 (8th Cir.1988), makes clear that the *Pieper* factors must still be met before equitable jurisdiction may be exercised.

### III.

■ Thus, we must determine whether the district court abused its discretion by reaching the merits of Kiesel's claim. *See Harper*, 835 F.2d at 1275. This is made difficult, of course, by the district court's failure to analyze the equitable considerations underlying the facts of the case. We are satisfied, however, that the district court's acceptance of jurisdiction need not be given deference in view of its failure to apply the proper *Pieper* analysis underlying this bare conclusion. Still, on the basis of the record before us, we have no hesitation in concluding that Kiesel is unable to adequately demonstrate that the *Pieper* factors have been met.

■ Most significantly, Kiesel is unable to show that the government acted in callous disregard of its fourth amendment rights. The federal agents searching Kiesel's premises first obtained a warrant from a United States District Judge using a lengthy and detailed affidavit describing a broad range of illegal activity to establish probable cause. Thus, the officers acted in objective good faith, rather than with callous disregard for Kiesel's right. *Cf. United States v. Leon*, 468 U.S. 897, 923–25, 104 S.Ct. 3405, 3420–22, 82 L.Ed.2d 677 (1984). "When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable." *United States v. Martin*, 833 F.2d 752, 756 (8th Cir.1987). In view of the agents' efforts to comply with the warrant requirement, and the first district judge's approval of the search, we cannot say that Kiesel's rights were callously disregarded, nor, in light of the unsealed affidavit available to us, do we conclude that there was callous disregard in the methods utilized in the search. The affidavit described numerous occasions of mixing waste oil contaminated with PCB with pure oil for resale and indicated that there was a wide pattern of such conduct. Examination of Kiesel's records over the period of time in question was justified by the affidavits. The affidavits also contained charges that not only had tanks containing contaminated oil leaked on the premises, but that sludge from cleanup activities was buried on the premises.

Further, we find neither of Kiesel's two allegations of irreparable injury persuasive. First, it claims that its ability to conduct business has been unduly hampered by the search, due to the actual seizure of needed documents. Although the record is sparse on this point, it does seem that the government has made provisions to allow Kiesel reasonable access to the seized documents. In any event, the burden is on Kiesel to prove interference with business operations, and it has not done so. Simple unsupported allegations of business disruption or speculations as to future harm are not sufficient to establish irreparable injury.

Second, Kiesel claims harm from the potential stigma of being improperly indicted on the basis of illegally seized evidence, thereby facing a criminal prosecution that might have been avoided. This is a more persuasive argument. As the Fifth Circuit has stated:

[A] wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public mind, the blot on a man's escutcheon, resulting from such a public accusation of wrongdoing, is seldom wiped out by a subsequent judgment of not guilty. Frequently, the public remembers the accusation, and still suspects guilt, even after an acquittal.

*Richey,* 515 F.2d at 1243 n. 10 (quoting *In re Fried,* 161 F.2d 453, 458–59 (2d Cir.), *cert. dismissed,* 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384 (1947)). Thus, it is completely plausible for Kiesel to claim that if the seized evidence results in an indictment that would not otherwise have issued, real harm will occur. Former business contacts may evaporate, future business may suffer, and a general taint may attach to Kiesel's owners and employees.

■ As real as this potential harm may be, however, we are not convinced that it is irreparable injury that warrants bypassing the normal procedures for challenging the constitutionality of searches by resorting to equitable remedies. These remedies are extraordinary, and they must be used with restraint. *See Harper,* 835 F.2d at 1274; *Pieper,* 604 F.2d at 1133; *United States v. Rapp,* 539 F.2d 1156, 1160–61 (8th Cir. 1976); *see also Meier v. Keller,* 521 F.2d 548, 554 (9th Cir.1975), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976); *Hunsucker,* 497 F.2d at 34. As the government correctly points out, however, if we were to allow the mere threat of future prosecution to constitute irreparable harm these procedures would not be extraordinary, but quite ordinary. Every potential defendant could point to the same harm, thereby invoking the equitable powers of the court. This has not been the practice of the past, and we see no reason to alter that course now. We therefore must conclude that the possible stigmatization of defending oneself in a criminal trial is an insufficient harm to justify the district court's use of its equitable powers.

Finally, as the government points out, should criminal proceedings be instituted, Kiesel will have an adequate remedy to challenge the search, namely a motion to suppress any evidence that has been improperly seized. Since none of the three *Pieper* factors have been met, the district court abused its discretion by exercising equitable jurisdiction. Kiesel should have been required to wait and litigate these issues during a criminal proceeding, most likely at a pretrial suppression hearing, the normal forum for such cases.

## IV.

■ Although we have disposed of the case on procedural grounds, we still feel compelled to comment on the district court's approach to the merits. The district court failed to give any deference whatsoever to the initial determination of probable cause, which was made by another district judge of the same district. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), makes clear that courts reviewing probable cause determinations do not do so *de novo.* "A magistrate's determination of probable cause should be paid great deference by reviewing courts. A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to warrant * * *." *Id.* 462 U.S. at 236, 103 S.Ct. at 2331 (citations omitted). The reasonableness of the search here is a close question, and the initial determination should have been weighed into the balance.

Were we to reach this issue, we are satisfied that, after according proper deference to the determination by the first district judge, having had the opportunity to consider the unsealed affidavit, and after inviting supplemental briefing by both parties on this document, we would determine that the district court erred in ruling the search warrant constitutionally overbroad. The affidavit described a pervasive pattern, extending over a period of time, of the mixture of used contaminated oil with fresh oil, and either accidental or intentional contamination of the premises with such oil. We would conclude that the warrant

and search were fully supported by our earlier decision in *United States v. Kail,* 804 F.2d 441 (1986). In our view, the affidavits describe circumstances permeating the entire business operation, as in *Kail,* so as to support a determination of probable cause that the operation was permeated with illegal conduct occurring over a period of several years. The records dealing with Kiesel's used oil and hazardous waste operations, which was the limitation placed on the warrant, were properly seized.

We mention only two related procedural inconsistencies in the district court's opinion. Although it relied strongly on *Rickert,* it refused to follow the *Rickert* example of unsealing the affidavit. Additionally, there was a factual dispute as to whether the affidavit was present at the time of the search or not, but the district court did not make a factual finding on this issue. In view of the development of the case, these issues are now irrelevant, but following *Rickert* consistently and determining whether the warrant was present at the search might have channeled this case into a substantially different pattern than that presented to us.

### V.

To summarize, we believe that the issues of this case were decided prematurely. Since Kiesel could not justify the exercise of equitable jurisdiction, it must wait until an indictment is brought, and challenge the search in a suppression hearing. The judgment of the district court is reversed, and the case is remanded with instructions to dismiss.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I would affirm the judgment of the district court both in the application of its equitable jurisdiction and in the quashing of the overbroad, facially defective search warrant.

The majority cites *Pieper v. United States,* 604 F.2d 1131 (8th Cir.1979) (*Pieper*) for the proposition that a court is required to make three findings of fact[1] before it exercises its equitable jurisdiction[2] to determine the legality of a search warrant. I do not so read *Pieper* or its supporting authority. *See also Richey v. Smith,* 515 F.2d 1239 (5th Cir.1975) (*Richey*).[3]

The issue on appeal in *Pieper* was whether a district court had abused its discretion by refusing to exercise its equitable jurisdiction to quash a search warrant. This court noted that the district court had considered the three *Richey* factors, and that "they are *appropriate* considerations for the District Court." 604 F.2d at 1133 (emphasis added). *Pieper* does not hold that an explicit finding of fact on each of these factors is mandatory before a court may exercise its equitable jurisdiction to quash an illegal search warrant.

In the instant case the district court implicitly considered the three factors when it stated that it was "following the apparent route of *Rickert* and the stated reasoning of *Richey v. Smith." The Kiesel Co. v.*

---

1. *See* op. at 387:
   Our decision in *Pieper* ... holds that such jurisdiction is proper only upon a showing of callous disregard of the fourth amendment, irreparable injury if relief is not granted, and lack of an adequate remedy at law.

2. Such jurisdiction is referred to as a court's "anomalous jurisdiction" by the Fifth Circuit. *See Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir.1975) (*Richey*).

3. *Richey* indicates that the list of factors that the majority in the instant case seeks to make mandatory is neither mandatory nor exhaustive:
   In *Hunsucker* [*Hunsucker v. Phinney,* 497 F.2d 29 (1974) *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975) ], we listed *some* of the considerations that should govern the decision of the district court whether to exercise this "anomalous" jurisdiction. First ... whether ... government agents ... displayed "a callous disregard for the constitutional rights of the [plaintiff]." Other factors to be considered are: whether the plaintiff has an individual interest in and need for the material whose return he seeks; whether the plaintiff would be irreparably injured by denial of the property; and whether the plaintiff has an adequate remedy at law for the redress of his grievance.
   *Id.* at 1243–44 (emphasis added; citation omitted)

*Householder,* No. 88 Misc. 075, slip op. at 8 (E.D.Mo. Apr. 7, 1988).

Even if an explicit finding of fact on each of the *Richey–Pieper* factors were mandatory before a district court could exercise its equitable jurisdiction, the proper disposition of this case would be to remand it to the district court with directions to make the findings of fact. *See Richey,* 515 F.2d at 1244. Instead, the majority improperly makes the findings of fact for the district court, *see* Maj. op. at 388–89, unnecessarily indulging in judicial activism.

Accordingly, I would hold that the district court did not abuse its discretion in exercising its equitable jurisdiction.

In dicta, the majority concludes that, were it to reach the merits it would reverse the decision of the district court because the search warrant in question is not unconstitutionally overbroad. I disagree. I would hold that the district court correctly found that the search warrant was both overly broad and improperly executed.

A search warrant must limit the items to be seized so that "nothing is left to the discretion of the officer executing the search." *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). In the instant case the affidavit supplying the probable cause for the search warrant was not even at the scene of the search. Nor was there any document indicating what crime or crimes the Kiesel Company was suspected of committing. Therefore, nothing limited the discretion of the officers conducting the search even though this court has held that "some measure must be taken not only to limit the discretion of the executing officer but also to inform the subjected person what the officers are entitled to take." *Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir.1987). Because the search warrant in the instant case did not limit the discretion of the officers, they did indeed search and seize the records of many of the Kiesel Company's subsidiaries and controlled corporations which have nothing to do with waste oil production and sale.

A search warrant so broad that it allows seizure of all or almost all of the business papers of an entity is constitutionally permissible only if the government can show "probable cause to believe that fraud permeated the entire business operation." *United States v. Kail,* 804 F.2d 441, 445 (8th Cir.1987) (*Kail*). Even with the support of the affidavit, the government cannot make such a showing. The Kiesel Company consists of such diverse subsidiaries and controlled corporations as Berryfast, Inc., a California corporation manufacturing pneumatic tools, nails and staples, and Ridgetop Farms, Inc., an Illinois farming and cattle raising corporation. Waste oil production and sales account for less than ten percent of the Kiesel Company's gross income. Yet all of the allegedly illegal activities cited in the affidavit (which was only made available to Kiesel Company in redacted form months after the search) involve waste oil production and sales and related activities. No fraud is alleged in pneumatic tool manufacturing or farming activities, or any of the other widespread enterprises of the Kiesel Company. For that reason, *Kail* does not control this case as the majority suggests. Furthermore, unsealing the affidavit would have been of little use to the district court in trying to save this facially overbroad warrant.

For these reasons, I would affirm the judgment of the district court.