In the Matter of the SEIZURE OF ONE WHITE JEEP CHEROKEE, VIN # 1J4GZ78Y7TC199455; One 1996 Jeep VIN # 1J4GZ58Y5TC240055; One 1996 Jeep VIN # 1J4GZ78Y4TC254363; One 1994 Jeep shell VIN # RC169503.

Magistrate No. 4–97–M–20212.

United States District Court, S.D. Iowa.

Jan. 20, 1998.

David Reinschmidt and Stanley E. Munger, Sioux City, IA and Thomas J. Organ, Arlington Heights, IL, for Petitioner, Pamela Kooiker.

Assistant U.S. Attorney, Michael Hobart, Sioux City, IA, for U.S.

## ORDER

**LONGSTAFF, District Judge.**

An application for return of seized property and request for expedited hearing was filed by Pamela Kooiker, d/b/a Fantasy Auto (Kooiker) on October 10, 1997. The matter was referred to United States Magistrate Judge Paul A. Zoss on November 13, 1997, pursuant to 28 U.S.C. Section 636(b)(1)(B) for further proceedings and submission of recommendations for disposition of the application.

Judge Zoss conducted an evidentiary hearing on the application on November 18, 1997 and submitted a Report and Recommendation to this Court on December 22, 1997. After filing objections to the Report and Recommendation on January 5, 1998, Kooiker filed a withdrawal of those objections on January 16, 1998. In the interim, the United States of America filed a response supporting the Report and Recommendation.

"When no timely objection is filed the [district] court need only satisfy itself that there is no clear error on the face of the record." *Taylor v. Farrier,* 910 F.2d 518 520 (8th Cir.1990).

The Court has carefully examined the thorough Report and Recommendation submitted by Judge Zoss and finds that it should be adopted in full.

IT IS THEREFORE ORDERED that judgment be entered in favor of the United States and against Kooiker and that the application seeking return of seized property be and is hereby denied.

## REPORT AND RECOMMENDATION

ZOSS, United States Magistrate Judge.

### I. INTRODUCTION

Pamela Kooiker, d/b/a Fantasy Auto ("Kooiker") filed an Application for Return of Seized Property and Request for Expedited Hearing on October 10, 1997 (Docket No. 5). The motion was resisted by the United States on October 24, 1997 (Docket No. 7), Along with its resistance, the United States filed a "Certification of Ongoing Criminal Investigation" stating that the items which are the subject of this action are evidence in an ongoing federal criminal investigation.

The court heard evidence on the application at a hearing held in Sioux City, Iowa on November 18, 1997.[1] David Reinschmidt, Stanley Munger and Thomas Organ appeared on behalf of the petitioner. Assistant U.S. Attorney Michael Hobart appeared on behalf of the United States.

### II. BACKGROUND

In August and September 1997, the State of Iowa, pursuant to state search warrants, seized a number of vehicles from Fantasy Auto in Rock Valley, Iowa. On October 2, 1997, the United States seized the vehicles from the state under the authority of a federal search warrant. Pamela Kooiker filed this application asking the court to order the vehicles returned to her. Kooiker also submitted an affidavit in support of her application in which she identified the seized items as three Jeep Cherokee vehicles and one Jeep Cherokee shell. Attached to her affidavit are copies of certificates of title to the three Jeep Cherokees and a bill of sale for the Jeep Cherokee shell. Also attached is the affidavit of Joseph DeRiso in which he states that he was the lawful owner of the Jeep Cherokee shell and that he sold the Jeep Cherokee shell to Kooiker.

Kooiker states in her affidavit that the seized items were not acquired from the proceeds of criminal activity, were not used to facilitate the commission of a criminal offense, and were not purchased as an inducement to commit a criminal offense. She further recites that her business, Fantasy Auto, will suffer irreparable harm unless the seized items are returned to her immediately. She alleges that the seized items have a value of approximately $100,000, and that this represents about one-third of the value of her entire inventory of vehicles.

---

**1.** Although this is a Southern District of Iowa matter, at the request of the parties, the hearing was held in *Sioux City, Iowa.* The undersigned *U.S. Magistrate Judge,* who is cross-designated to the Southern District of Iowa, heard the case based on a referral from the Honorable Ronald E. Longstaff entered on November 13, 1997 (Docket No. 11).

The United States offered no evidence, but submitted to the court for *ex parte* review a sealed application and affidavit in support of a search warrant issued by United States Magistrate Judge Celeste Bremer to seize these items. The court also took an *ex parte* proffer from a state investigator who is working on a criminal investigation involving the seized items.[2]

This case raises the question of whether and under what circumstances the seizure of property pursuant to a lawfully issued warrant becomes either a violation of due process or an unlawful taking under the Fifth Amendment of the United States Constitution.[3]

## III. LEGAL ANALYSIS

### A. Jurisdiction

■ The court must first determine whether, under either Rule 41(e) of the Federal Rules of Criminal Procedure or the court's general equitable jurisdiction, the court has jurisdiction to hear Kooiker's motion. There are some authorities that suggest that there is no pre-indictment jurisdiction under Rule 41(e).[4] *See Black Hills Institute of Geological Research v. United States Dep't of Justice*, 967 F.2d 1237, 1239 (8th Cir.1992) ("a motion prior to the filing of criminal charges is more properly considered a suit in equity rather than one under the Rules of Criminal Procedure"); *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir.1993) ("[o]rdinarily, Rule 41(e) is used to seek the return of seized property after an indictment has been issued"), *cert. denied*, 511 U.S. 1058, 114 S.Ct. 1624, 128 L.Ed.2d 349 (1994). Some authorities indicate that a Rule 41(e) motion can be filed before the indictment. *See, e.g., United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir.1987) (holding that when a Rule 41(e) motion is made before an indictment is filed but during a pending investigation, the movant bears the burden of proving that he or she is entitled to lawful possession of the property). Other authorities suggest that such actions are governed by equitable principles, whether viewed as based on Rule 41(e) or on general equitable jurisdiction. *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir.1975); *Hunsucker v. Phinney*, 497 F.2d 29 (5th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975).

In *In re Harper*, 835 F.2d 1273 (8th Cir.1988), federal agents seized $29,000 from Harper after a search of his carry-on bag at an airport. No criminal charges were ever brought against Harper, and none were contemplated. *Id.* at 1275. Harper filed a motion for return of the seized money under Fed.R.Crim.P. 41(e). The government resisted, contending that the money had been administratively forfeited.[5]

The court began its analysis by noting that "Rule 41(e) is 'a crystallization of a principle of equity jurisdiction.'" *Harper*, 835 F.2d at 1274 (citing *United States v. Rapp*, 539 F.2d

**2.** The acceptance of *ex parte* evidence in this type of case is a procedure that has been used often. *See, e.g., Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15 (7th Cir.1978); *Shea v. Gabriel*, 520 F.2d 879 (1st Cir.1975).

**3.** The Fifth Amendment states, in relevant part: "No person shall be ... deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

**4.** Federal Rule of Criminal Procedure 41(e) provides:

A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. *If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.*

Fed.R.Crim.P. 41(e) (emphasis supplied). The last sentence of the rule seems to suggest that there are situations where a Rule 41(e) motion could be made before an indictment or information is filed.

**5.** Harper filed the Rule 41(e) motion after the civil forfeiture action had been commenced, but before it had been completed.

1156, 1160 (8th Cir.1976) (quoting *Smith v. Katzenbach*, 351 F.2d 810, 814 (D.C.Cir. 1965))). The court then found that Harper could have filed a Rule 41(e) motion for pre-indictment return of the illegally seized property. *Harper*, 835 F.2d at 1274 (citing *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76 L.Ed.2d 143 (1983) [hereinafter *U.S. Currency $8,850* ]). However, because he had failed to challenge the civil forfeiture, the court ruled that Harper therefore lost the right to file a Rule 41(e) motion. *Harper*, 835 F.2d at 1274.

■ In *Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385 (1989) [hereinafter *Kiesel* ], *cert. denied sub nom. Kiesel Co., Inc. v. Householder*, 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990), the Eighth Circuit Court of Appeals stated that the district court had properly considered the company's claim as an equitable proceeding rather than under Rule 41(e) because "a motion prior to any suggestion of criminal proceedings, as here, is more properly considered as a suit in equity rather than one under the Rules of Criminal Procedure." *Id.* at 387 (citing *Richey v. Smith*, 515 F.2d 1239, 1245 (5th Cir.1975)). Thus, under the standard rule in this circuit, a Rule 41(e) motion is only appropriate after there is a "suggestion of criminal proceedings." Although the Eighth Circuit did not clearly explain the meaning of this language, it does not appear that the investigation in the present case is in a stage materially different from the investigation in *Kiesel*. Therefore, the court finds that it does not have jurisdiction to entertain this motion under Rule 41(e).

■ Kooiker also argues that the court has the equitable power "to order the pre-indictment return of illegally seized property." (Pamela Kooiker d/b/a/ Fantasy Auto's Br. in Supp. of Return of Seized Property, at 4.) The court in *Kiesel*, applying the standards set out in *Pieper v. United States*, 604 F.2d 1131, 1133 (8th Cir.1979), held that equitable jurisdiction, or "anamolous jurisdiction,"[6] should only be exercised "upon a showing of callous disregard of the Fourth Amendment, irreparable injury if relief is not granted, and lack of an adequate remedy at law." *Kiesel*, 879 F.2d at 387. Thus, to decide whether it has equitable jurisdiction in this case, the court must apply the three *Pieper* standards to the facts of this case to determine (1) whether there has been a callous disregard of the Fourth Amendment, (2) whether Kooiker will suffer irreparable injury if relief is not granted, and (3) whether there is an adequate remedy at law.

In addressing the first *Pieper* standard, the court in *Kiesel* noted that the federal agents first obtained a search warrant, supported by a detailed affidavit describing a broad range of illegal activity to establish probable cause. *Kiesel*, 879 F.2d at 388. "Thus, the officers acted in objective good faith, rather than with callous disregard for [the plaintiff's] right." *Id.* (citing *United States v. Leon*, 468 U.S. 897, 923–25, 104 S.Ct. 3405, 3420–22, 82 L.Ed.2d 677 (1984)). The court determined that, since the agents had complied with the warrant requirement, it could make no finding that the plaintiff's rights were callously disregarded. *Kiesel*, 879 F.2d at 388. Similarly, in this case, since the agents complied with the warrant requirement, the court finds that there has been no callous disregard of the fourth amendment.

The court in *Kiesel* went on to consider the other *Pieper* standards. The movant alleged two types of irreparable harm: first, its ability to conduct business was being unduly hampered by the seizure of needed documents; and second, it faced a stigma of being improperly indicted on the basis of illegally seized evidence. *Id.* The court found that the plaintiff had not submitted sufficient evidence to prove that the seizure would interfere with its business, and that the potential stigma from being improperly indicted on the basis of illegal evidence did not warrant "bypassing the normal procedures for challenging the constitutionality of searches by resorting to equitable remedies." *Id.* at 389.

---

6. *Lord v. Kelley*, 223 F.Supp. 684 (D.Mass.1963), *appeal dismissed*, 334 F.2d 742 (1st Cir.1964), *cert. denied*, 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965).

In the present case, Kooiker asserts the same two types of prejudice. In her affidavit, Kooiker states:

8. Fantasy Auto will suffer irreparable harm unless the three Jeep Cherokees and the Jeep Cherokee shell are returned to me immediately.

9. I have paid for the three Jeep Cherokees and the Jeep Cherokee shell and my business depends upon their resale.

10. Each day that the government retains those vehicles and shell they depreciate, which loss in value I cannot recover.

11. The three Jeep Cherokees and the Jeep Cherokee shell constitute one-third of the entire value of my inventory, as the three Jeep Cherokees and the Jeep Cherokee shell are valued at approximately $100,000.00.

12. My entire inventory, *including* the seized vehicles and shell, is approximately $300,000.00.

13. In addition, since the seizure of the three Jeep Cherokees and the Jeep Cherokee shell my business has been effectively shut down, because neither wholesale nor retail customers will do any business whatsoever with me because of their concern that due to the federal government's seizure of my vehicles, I must be engaged in criminal activities.

14. Businesses, including suppliers, salvage yards, gasoline stations, either refuse to do business with me, or demand that all my bills be paid in cash.

(Pamela Kooiker d/b/a/ Fantasy Auto's Aff., Nov. 14, 1997, ¶¶ 8–14.) Unlike the situation in *Kiesel,* the court here finds that Kooiker, based on the statements in her affidavit, has made an adequate showing of irreparable harm.

■ On the question of whether there was an adequate remedy at law, the court in *Kiesel* pointed out that, should criminal proceedings be instituted, the plaintiff would have a remedy to challenge the search, namely, a motion to suppress. *Kiesel,* 879 F.2d at 389. However, the court did not consider whether the movant had an adequate remedy for any undeserved monetary damages suffered as a result of the seizure. Here, Kooiker claims that her only remedy for such damages would be under the Federal Tort Claims Act ("FTCA"), and that because of the exceptions under the FTCA, this remedy would be inadequate.

In *Cheney v. United States,* 972 F.2d 247 (8th Cir.1992) (per curiam), the plaintiff sued the government under the FTCA. The plaintiff asserted that the government was liable for damages caused to his vehicle when a federal agent seized the title certificate to the vehicle and later returned it to the plaintiff's girlfriend, who, under a pre-existing arrangement the plaintiff had made with a storage facility, was able to retrieve the vehicle and damage it while it was in her possession. *Id.* at 248. The court noted that "[u]nder 28 U.S.C. § 2680(c),[7] the FTCA's broad waiver of sovereign immunity does not apply to 'claim[s] arising [from] ... the detention of any goods or merchandise by any ... law-enforcement officer.' This exception extends to damage claims resulting from the negligent handling of detained property." *Cheney,* 972 F.2d at 248 (citing *Kosak v. United States,* 465 U.S. 848, 854, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984)).

The *Cheney* court ruled that, even though the government never actually possessed the vehicle, the plaintiff's claim fell well within the exception to the FTCA's waiver of sovereign immunity in § 2680(c). *Cheney,* 972 F.2d at 248 (citing *Kosak,* 465 U.S. at 853–54, 104 S.Ct. at 1523–24 ("holding language of exception entitled to broad interpretation, including all injuries arising from a government official's detention of property"); *Schlaebitz v. United States Dep't of Justice,* 924 F.2d 193, 194 (11th Cir.1991) (per curiam) ("holding loss of property because of improper release to third person falls within section 2680(c) exception")). Similarly, any

---

7. Section 2680(c) provides that the FTCA shall not apply to

[a]ny claim arising in respect of the assessment or collection customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

28 U.S.C. § 2680(c).

damage to the vehicles in the instant case would fall under the exception to the waiver of sovereign immunity under the FTCA and Kooiker would not be able to assert her claims against the United States. Thus, she has shown that she has no adequate remedy at law.

Based on this record, the court finds that Kooiker has made a sufficient showing under *Pieper* for the court to exercise its equitable jurisdiction.

### B. Should the Court Order the Property Returned?

Kooiker relies primarily on *Rickert v. Sweeney*, 813 F.2d 907 (8th Cir.1987), as support for her argument that the vehicles should be returned to her. In *Rickert*, a search warrant was issued authorizing the I.R.S. to search of the offices of several corporations. *Id.* at 908. The warrant did not specify what could be seized pursuant to the warrant, and was limited only by references to the general conspiracy statute, 18 U.S.C. § 371, and several tax evasion statutes. Pursuant to the warrant, I.R.S. agents seized the corporations' business records, filing cabinets, dictating equipment, slide projectors, credit cards, computers, calculators, bank forms, rolodex holders, printers, and briefcases, causing the near total cessation of all the corporations' business activities. The affidavit in support of the warrant remained sealed, and no indictment was returned. *Rickert*, 813 F.2d at 908.

The Eighth Circuit observed that the Fourth Amendment prohibits general searches, *id.* at 909 (citing *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)), but that the inclusion of a statutory reference could provide the necessary particularity, *id.* (citing *In re Grand Jury Proceedings*, 716 F.2d 493, 499 (8th Cir.1983)). After an *in camera* review of the sealed affidavit, the court of appeals determined that the statutory references in the warrant were insufficient to support the seizure of all of the items seized. *Rickert*, 813 F.2d at 909. As a consequence, the court ruled that "the warrant lacks sufficient particularity under the fourth amendment without the affidavit" and that "[u]nless the district court discloses the affidavit to Rickert and his companies, the court must declare the warrant invalid for lack of particularity and order return of all the seized material." *Id.*

In the present case, there is no claim that the warrant lacks particularity. In fact, it could hardly be more specific—each seized vehicle was identified by its own individual vehicle identification number. The *Rickert* case does nothing to advance Kooiker's claim.

■ Kooiker also relies on *Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15 (7th Cir.1978). In that case, FBI agents seized $65,000 from the plaintiff pursuant to a search warrant. *Id.* at 16. About seven months later, the plaintiff filed suit, requesting, on equitable grounds, that the court order the currency returned. According to the Eighth Circuit, "[t]he critical inquiry then [was] whether the Government [had] an adequate justification for withholding the plaintiff's $65,000 for over 17 months without bringing any charges against the plaintiff." *Id.* at 17. The court stated that the government is not required to secure an indictment immediately after it seizes property pursuant to a grand jury investigation, but added that "if no charges are filed for nearly one and a half years after the property was seized, and the Government is unable to present evidence justifying such a delay, constitutional violations emerge which would seem on equitable principles to mandate that the property be returned." *Id.* Because the court was unable to determine from the record whether the government could reasonably justify its conduct, it therefore remanded the case for hearing, specifically authorizing the district court in its discretion to conduct the hearing *in camera* to the extent necessary. Id. The court also outlined several factors for the lower court to consider on remand: "whether the plaintiff has an individual interest in and need for the material whose return it seeks; whether it would be irreparably injured by denial of the return of the property; and whether it has an adequate remedy at law for redress of its grievance." *Id.*

In the present case, the court has conducted an *in camera* inspection of the affidavit which supported the search warrant, and has taken *ex parte* evidence on the reasons for the government's opposition to the return of the vehicles. The court finds that it has sufficient evidence to proceed with a ruling on whether the property should be returned. However, rather than applying the test in *Mr. Lucky Messenger Service,* the court believes that it should use the test set forth in *U.S. v. $8,850 in U.S. Currency,* 461 U.S. at 564, 103 S.Ct. at 2012. *Accord United States v. Eighteen Thousand Five Hundred and Five Dollars and Ten Cents ($18,505.10),* 739 F.2d 354, 356 (8th Cir.1984) [hereinafter *U.S. v. $18,505.10* ].

In *U.S. Currency $8,850,* 461 U.S. at 556, 103 S.Ct. at 2012, the Supreme Court held that the balancing test of *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), provides the relevant framework for determining whether the government has acted reasonably in delaying the filing of a forfeiture action. The *Barker* test requires the court to weigh four factors: (1) length of delay, (2) the reason for the delay, (3) the claimant's assertion of his rights, and (4) the prejudice to the claimant. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192; *U.S. Currency $8,850,* 461 U.S. at 564, 103 S.Ct. at 2012.

In *U.S. Currency $18,505.10,* 739 F.2d at 355, police officers executed a search warrant for claimant's residence and seized a number of items. The government eventually initiated a forfeiture action to forfeit the seized items, and the claimants resisted, claiming that the delay of the government in instituting the forfeiture action violated their right to due process. *Id.* at 355–56. The Eighth Circuit applied the *Barker* test to determine whether the claimants' due process rights had been violated, focusing on the reason for delay, and citing to the following language from *U.S. Currency $8,850:*

> Pending criminal proceedings present similar justifications for delay in instituting civil forfeiture proceedings. A prior or contemporaneous civil proceeding could substantially hamper the criminal proceedings, which—as here—may often include forfeiture as a part of the sentence. A prior civil suit might serve to estop later criminal proceedings and may provide improper opportunities for the claimant to discover the details of a contemplated or pending criminal prosecution.

*U.S. v. $18,505.10,* 739 F.2d at 356 (quoting *U.S. Currency $8,850,* 461 U.S. at 567, 103 S.Ct. at 2013).

In *United States v. United States Treasury Bills Totaling $160,916.25 and United States Currency Totaling $2,378.75,* 750 F.2d 900 (11th Cir.1985) (per curiam) [hereinafter *U.S. Treasury Bills* ], a suitcase containing a large quantity of currency was recovered from the wreckage of a plane crash. *Id.* at 901. A drug smuggling investigation was then undertaken, culminating in the conviction of 11 defendants. Fourteen months after the seizure of the money, the government instituted a forfeiture action. The executor of the deceased pilot's estate challenged the forfeiture, arguing that the delay in filing the forfeiture action was unreasonable. *Id.* The court applied the four factor balancing test from *U.S. Currency $8,850,* 461 U.S. at 564, 103 S.Ct. at 2012. *U.S. Treasury Bills,* 750 F.2d at 902. The government conceded that a 14 month delay was sufficient to trigger further inquiry into the other *Barker* factors. *Id.* Addressing the reason for the delay, the court emphasized the Supreme Court's holding in *U.S. Currency $8,850* that "diligent pursuit of pending criminal proceedings presents strong reasons for delay in instituting civil forfeiture proceedings," *U.S. Treasury Bills,* 750 F.2d at 902, and continued:

> The district court determined that these considerations were significant in this case. The court noted the period between November 1980 and January 1982 was consumed with conducting a massive criminal investigation and prosecution of the very criminal activity that generated the funds. Moreover, there is nothing to indicate that the Government's investigation and subsequent criminal case was not pursued with diligence. In fact, considering the scope and nature of the criminal charges it was apparent that the investigation and prosecution proceeded quite rapidly. Moreover, the district court found that a contempora-

neous civil proceeding would have provided improper opportunities to discover the details of the Government's criminal case. *Id.*

In *Shea v. Gabriel*, 520 F.2d 879 (1st Cir. 1975), federal agents served search warrants on the plaintiff and seized approximately $4,368. The plaintiff filed the action, asking the court to order the return of the money and requesting an order permitting him to examine the sealed affidavit supporting the warrants. *Id.* at 880. The district court refused to order the return of the property, finding that the legitimate and appropriate governmental interests in using the property as evidence outweighed the prejudice to the plaintiff of delaying the return of the property. *Id.* The district court's ruling was without prejudice to its renewal were the government to fail to proceed with reasonable dispatch in pursuing its case. *Id.* at 880 n. 4. The district court also conducted an *in camera* examination of the affidavit submitted in support of the search warrants, and declined to order its disclosure. The First Circuit Court of Appeals held as follows:

> First, the district court carefully balanced the government's interest in secrecy to protect its on-going investigation against the temporary loss to Shey of the property here at issue. We are not inclined to disturb the balance struck, at least absent any reason to believe that the cloak of secrecy is being abused by the government. Second, the judge below did entertain the appellant's complaint to the extent he could within the confines of the secrecy requirement. He examined the affidavit in camera, and determined that it was at least prima facie support for a finding of probable cause. Third, the dismissal was without prejudice to reasserting the claim if the government's delay in either prosecuting or taking other dispositive action reaches unreasonable proportions. Lastly, appellant made no effort to show that he is

entitled to the lawful possession of the seized items.

*Id.* at 882 (citation omitted).

■ In the instant case, the court finds that application of the *U.S. Currency $8,850–Barker* test requires that Kooiker's motion be denied at this time. The length of the delay, which has been at most just over four months,[8] is small when compared with the delays in other cases that have addressed this issue. The court further finds that, based on its *in camera* review of the affidavit in support of the warrant and the *ex parte* evidence submitted by the government, the reasons for the delay are sufficient to justify the delay to this point. Finally, the court finds that the claimant has vigorously asserted her rights, and that she has shown prejudice from the seizure.

Having weighed these factors, the court is persuaded that the United States should be permitted to retain the vehicles for an additional period of time. Where, as here, the government is engaged in the diligent pursuit of a criminal investigation, there are strong reasons for permitting a delay in the institution of civil forfeiture proceedings. *U.S. Treasury Bills*, 750 F.2d at 902. The court, in its recommendation today, recognizes the sensitivity of the government's need to conduct an ongoing criminal investigation without jeopardizing its progress by forcing the government to tip its hand. However, at some point, this governmental interest will be outweighed by the interests of the claimant in her property. The court's ruling is without prejudice to Kooiker's right to renew her motion should the government fail to proceed with reasonable dispatch in pursuing its case. *Cf. Shea*, 520 F.2d at 880 n. 4.

### IV. CONCLUSION

**IT IS RECOMMENDED** that, unless any party files objections [9] to the Report and

---

8. All of the vehicles were first seized by the State of Iowa—two of the vehicles were seized on August 4, 1997, another was seized August 5, 1997, and the shell was seized on September 2, 1997. The United States seized the vehicles on October 2, 1997.

9. Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed.R.Civ.P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140,

Recommendation in accordance with 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b) within ten (10) days of the service of a copy of this report and recommendation, judgment be entered in favor of the defendant and against the plaintiff.

Dec. 22, 1997.

---

155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); *Thompson v. Nix,* 897 F.2d 356 (8th Cir.1990).

